THE PEOPLE *ex rel.* Harris F. Williams

*v.*

JOSEPH W. ERRANT *et al.*

*Opinion filed October 23, 1907.*

1. CIVIL SERVICE—*grade or rank does not depend exclusively upon salary.* Under the Civil Service act and the rules of the civil service commissioners of Chicago, the "grade" or "rank," with respect to promotions, is not fixed solely by the amount of salary received, but also by the line of employment.

2. SAME—*how promotions should be made.* Under a civil service rule providing that promotions shall be made from rank to rank or grade to grade in the same line or character of work, promotions must be upward toward a higher salaried position from the next lower salaried position *in the same line of employment,* the duties of which position, in a degree, qualify the holder thereof for the higher salaried one.

3. SAME—*ward superintendents are next in grade to assistant superintendent of streets in charge of cleaning.* Under the Civil Service law, the rules of the civil service commissioners of Chicago and the facts as stipulated in this case, ward superintendents in the city of Chicago are next in grade or rank to the assistant superintendent of streets in charge of street and alley cleaning, and are entitled, under the rules, to a promotional examination in case of a vacancy in such office.

4. SAME—*determination of commissioners that it is not practicable to fill a vacancy by promotion is not conclusive.* The determination of the civil service commissioners of Chicago, *in advance of holding any promotional examination,* that it is not "practicable" to fill a vacancy in the office of assistant superintendent of streets in charge of street and alley cleaning by promotion from the rank of ward superintendent is not conclusive, since the term "practicable," as used in section 9 of the Civil Service act, providing that vacancies shall be filled by promotion where practicable, means "possible."

5. SAME—*the civil service commissioners may be compelled, by mandamus, to hold promotional examination.* Civil service commissioners may be compelled, by *mandamus,* to hold a promotional examination for the purpose of filling a vacancy in an office in the classified service, where it is clearly their duty to do so under the Civil Service law and the rules adopted by the commissioners to carry such law into effect.

6. PARTIES—*who is not necessary party to mandamus proceeding*. A person appointed to fill a vacancy after the civil service commissioners have determined, without holding any promotional examination, that it is not practicable to fill such vacancy by promotion, is not a necessary party to a *mandamus* proceeding to compel the commissioners to hold a promotional examination for eligibility to fill the vacancy.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

The following statement of facts made by Mr. Justice Freeman, of the Branch Appellate Court of Cook county, is agreed to by both parties as an accurate statement. It also presents the facts as we understand them from the record:

"This is a petition for *mandamus*, filed by a citizen and tax-payer, it is said, for a writ of *mandamus* to compel the appellants, as civil service commissioners of the city of Chicago, to hold a promotional examination for the position of assistant superintendent of streets in charge of street and alley cleaning, the taking of such examination to be limited to ward superintendents of the city of Chicago.

"The petition sets forth the rules of the civil service commission in force from January 23, 1905, down to the time of filing the petition, and states that November 3, 1899, an original public competitive examination was had, free to all persons in the classified service and others, for the office of assistant superintendent of streets in charge of street and alley cleaning, but that since that time no further examination for that position has been held; that July 17, 1905, the superintendent of streets made a requisition on the commissioners for the name of one eligible to appointment to said position; that the commission claimed there was no list of eligibles from which certification could be made, and the superintendent of streets thereupon made a temporary appoint-

ment with the approval of the commissioners, which has been renewed from time to time, the appointee having never taken part in nor passed any examination under the Civil Service act. The petition states that there was held, April 30, 1898, an original examination for the position of ward superintendents, and that certain named persons passed successfully and were appointed ward superintendents; that said position is of the next lower rank to that of assistant superintendent of streets in charge of street and alley cleaning, and there is no intermediate office between them. It is charged to have been the duty of the civil service commissioners to provide by its rules that vacancies in the office or place of employment of said assistant superintendent shall be filled by promotion from the rank of ward superintendents in all cases where practicable, and that all examinations for promotion to the position of said assistant superintendent shall be competitive among members of the next lower rank, known as ward superintendents, who desire to submit themselves to such examination. It is alleged that more than fifteen of such ward superintendents are ready to participate in such examination and will register as candidates for said position, said persons being in all respects qualified for that office of assistant superintendent of streets in charge of street and alley cleaning.

"It appears that the superintendent of streets is the head of the bureau of streets, and his immediate superior is the commissioner of public works. Next in rank to the superintendent of streets are the assistant superintendent of streets, and the assistant superintendent of streets in charge of street and alley cleaning. It is stipulated, among other facts, that 'the duties of assistant superintendent of streets, ever since the year 1897 and down to the filing of the petition, have always been the superintendence, subject to the orders of the superintendent of streets, of all matters pertaining to street, sidewalk, culvert and crossing repairing, and all other work pertaining to the streets and alleys of the

city, excepting the work of street and alley cleaning and garbage removal.' It is also stipulated that neither of these assistant superintendents, the assistant superintendent of streets or the assistant superintendent of streets in charge of street and alley cleaning, has been or is subject to the orders of the other, but both alike are subject to the superintendent of streets, and there is no intermediate office between the latter and his two subordinates above mentioned.

"The duties of ward superintendents, it is stipulated, are the direction and superintendence of street, sidewalk, culvert and crossing repairing, and all other work pertaining to the streets, including street and alley cleaning and garbage removal, in their respective wards; and as to street and alley cleaning and garbage removal, their immediate superior has always been the assistant superintendent of streets in charge of street and alley cleaning. They also receive orders from his superior, the superintendent of streets; while as to duties pertaining to matters other than street and alley cleaning and garbage removal, the immediate superior of ward superintendents has always been the assistant superintendent of streets, and they receive orders in reference to such work also from his superior, the superintendent of streets. It is stipulated that unless the respective ranks of assistant superintendent of streets in charge of street and alley cleaning, and ward superintendents, are to be determined by the single test of their respective salaries, the office of ward superintendent is of the next lower rank to that of assistant superintendent of streets in charge of street and alley cleaning.

"It appears from the record that the civil service commissioners held an examination January 3, 1906, public, competitive and free, for the position of assistant superintendent of streets in charge of street and alley cleaning, at which eleven persons took the examination, five of whom passed. The highest on the list was Richard T. Cox, who was certified to the commissioner of public works and ap-

pointed to the position. The civil service commission had previously announced that in their judgment it was impracticable to fill said position by promotional examination, and that ward superintendents were not next in rank to the assistant superintendent of streets in charge of street and alley cleaning, and had refused to call a promotional examination. The appellants have placed ward superintendents in the fifth grade, the salaries being $1400, and the assistant superintendent of streets in charge of street and alley cleaning in the tenth grade, the compensation being above $3000.

"The judgment rendered grants relator a peremptory writ of *mandamus*, commanding respondents, the civil service commissioners, to hold a promotional examination, within thirty days from date, for the office of assistant superintendent of streets in charge of street and alley cleaning, unless they shall be prevented from so doing by the fact that none, or not more than one, of said ward superintendents shall register for such promotional examination, and in case said examination shall be successfully passed by one or more of said ward superintendents, to make an eligible list composed of such ward superintendents as shall have successfully passed said examination, and to certify therefrom."

Under these facts the Branch Appellate Court was of the opinion that ward superintendents were not next in rank or grade to assistant superintendent of streets in charge of street and alley cleaning under the classification made, and that it was therefore not practicable to hold a promotional examination. The judgment of the trial court was reversed and the case remanded, with directions to dismiss the petition. The petitioner appeals to this court.

HIRAM T. GILBERT, for appellant.

CLYDE L. DAY, and GEORGE W. MILLER, (EDWARD J. BRUNDAGE, Corporation Counsel, of counsel,) for appellees.

Mr. JUSTICE VICKERS delivered the opinion of the court:

The act to regulate the civil service of cities was passed in 1895. The whole scheme of civil service is a development of modern political thought, hence the law may be regarded in its formative period. Most of the questions arising under it are new and but little assistance can be found in the analogies of the law. In construing the law or rules made to carry out its provisions certain considerations which led to its adoption must be kept in view. The first and most important object to be accomplished by a system of civil service is to increase the efficiency of the service. This is a worthy purpose and one that appeals to the good sense and sober judgment of thoughtful men. To accomplish this great purpose the Civil Service law seeks to remove the service to which it applies from the domain of party politics and re-adjust it on a common-sense, business basis, placing before the officer or employee every possible inducement to render faithful and conscientious service. Among the means devised to secure the highest degree of efficiency are the assurance that the employee is not in danger of being swept from his place by an unfavorable turn of the political wind, and that faithful, honest and efficient service in one position will open up possibilities for future promotion to a better one. The success of the system, in the nature of things, rests primarily with the persons charged with its administration. So long as the administrative agents are making an honest effort to carry out the provisions of the law in its true spirit they should be left free to exercise a reasonable discretion in all matters depending on information of details and local conditions. With these general observations in view we will proceed to express our conclusions on the questions presented by this record.

Strictly speaking, there is but one ultimate question to be decided, which is, is it the duty of the civil service commissioners to hold a promotional examination for assistant superintendent of streets in charge of street and alley clean-

ing, limiting such examination to ward superintendents, and if so, is the duty of that clear and undoubted legal character which is enforceable by *mandamus?* The solution of this question depends upon the decision of two subordinate propositions:

*First*—Is the rank or grade of ward superintendents next below that of assistant superintendent of streets in charge of street and alley cleaning? To this question the trial court gave an affirmative answer and the Branch Appellate Court replied in the negative. By the stipulation of the parties this question is simplified. It is stipulated as follows: "Unless the respective ranks of assistant superintendent of streets in charge of street and alley cleaning, and ward superintendents, are to be determined by the single test of their respective salaries, the office of ward superintendent is of the next lower rank to that of assistant superintendent of streets in charge of street and alley cleaning."

Rule 2 of the appellees relates to "divisions and grades." Section 4 of said rule provides as follows:

"Sec. 4. The terms 'grade' and 'rank,' wherever used in the Civil Service act or rules, shall be treated as synonymous and convertible terms. The grades shall be uniform in all classes and divisions and based upon compensation, as follows: "First grade, less than $800 per annum; second grade, $800 or more and less than $1200 per annum; third grade, $1000 or more and less than $1200 per annum; fourth grade, $1200 or more and less than $1400 per annum; fifth grade, $1400 or more and less than $1600 per annum; sixth grade, $1600 or more and less than $1800 per annum; seventh grade, $1800 or more and less than $2100 per annum; eighth grade, $2100 or more and less than $2500 per annum; ninth grade, $2500 or more and less than $3000 per annum; tenth grade, $3000 or more per annum."

Ward superintendents receive $1400 per year and the assistant superintendent of streets in charge of street and

alley cleaning receives $3840 per year.   The former are therefore, on a salary classification, in the fifth grade while the latter is in the tenth grade.   It must be remembered, to avoid confusion, that the civil service of Chicago is divided into eleven divisions, as follows:  Division A, medical service; division B, civil engineering; division C, clerical service;   division   D,   police   service;   division   E, electrical service;  division G, library service;  division H, bridge service;  division I, inspection service;  division J, elevator service;  division K, mechanical engineering;  division L, miscellaneous service.   There are also five groups or bureaus, as follows:  (1) Bureau of engineering;  (2) bureau of water;  (3) bureau of streets;  (4) bureau of sewers;  (5) all laborers not otherwise grouped.

The salary classification applies not alone to the bureau of streets, but also to all the classified service of the city. In view of the complexity of the service it would probably be next to impossible to devise a reasonable and practicable classification without taking into account the salary carried by the various offices or places.  The promotion scheme that enters into the civil service system is based on the idea of a salary classification.  No one would be much stimulated by the prospect of a promotion that did not offer an increase of salary, and the idea of a promotion from a place bearing one salary to another carrying less compensation would be a reversal of the natural incentives to efficiency and would defeat the purposes of the system.  The classification on the salary basis in the city of Chicago seems to be based on a similar classification adopted in the State of New York, where civil service was introduced in 1883 and later (in 1894) was incorporated in the State constitution.   (See *Chittenden* v. *Wurster*, 152 N. Y. 345;  46 N. E. Rep. 857.) While a salary basis seems to be an essential element in any system of classification, yet a little reflection will show that any hard and fast rule based exclusively on salary, leaving out of view every other consideration, would be imprac-

ticable, and defeat, in many cases, the purposes of the system. To illustrate: Suppose in the bureau of health there is a hospital for the insane under the charge of a superintendent, at a salary of $3000 per year, who must be a physician. Directly under the superintendent there are ten ward physicians in charge of the various wards of the hospital, at salaries of $1800 per year. In the same institution there are book-keepers, stewards, stenographers, purchasing agents, attendants, and various other employees, with salaries ranging from $600 to $2500 per year. If a vacancy should occur in the office of superintendent it would be illogical and unreasonable to say that the ten ward physicians should be put aside and a class made up for promotion out of the stenographers, book-keepers or purchasing agents, whose salaries happened to be next in grade below the superintendent. Common sense and the spirit of the Civil Service law would naturally suggest that the vacancy, in the case put, should be filled from a promotional examination open only to the ten ward physicians. This illustration will serve to show the necessity of some flexibility in the so-called salary classification. This element is imparted to the classification by section 1 of rule 7 adopted by appellees, which is as follows: "Promotions in the classified service shall be based on ascertained merit and seniority of service, and shall be from rank to rank or grade to grade (except as otherwise provided in this rule) in the same line or character of work to be determined by the commission, and shall be made upon voluntary competitive examination."

Under this rule, classification for promotion must be from rank to rank, except as otherwise provided, *in the same line of service.* The requirement that the promotion is to be in the same line of employment rests on the rational basis that careful and studious attention to the duties of one station or place has an educational tendency to prepare one for advancement to a higher position in the same line. In our opinion the proper construction of these rules is that promo-

tion shall be made upward,—that is, toward the higher salaried place from the grade next below in the same ·line of employment,—and that the same line of employment means those positions in the various departments the duties of which are so related to the duties of the higher place that a thorough knowledge of them is in a degree preparatory for the duties of the higher position. In going down the line of positions from assistant superintendent of streets in charge of street and alley cleaning, the next is assistant superintendent of streets, with a salary of $2600 per annum. It is not claimed that the place of superintendent of streets in charge of street and alley cleaning should be filled from this grade. There is nothing in common between the duties of these positions. The next is clerk of street and alley cleaning. This is an office position, and while it is under the bureau of streets, it is not at all in the same line of service with the assistant superintendent of streets in charge of street and alley cleaning. The next in order is ward superintendent. The duties of a ward superintendent are of the same general character as those of the assistant superintendent of streets in charge of street and alley cleaning. The difference is, a ward superintendent has charge of the street and alley cleaning in a ward of the city, while the assistant superintendent of streets in charge of street and alley cleaning has general charge of all the wards. The ward superintendents are the captains in charge of their several companies of laborers, while the assistant superintendent of streets in charge of street and alley cleaning is the major in command of the whole force. By a comparison of the questions used in the examination of the two classes of officers there is a striking similarity. They relate to the same general subjects and are designed to test the practical knowledge of the applicant in relation to street building, repairing and cleaning. But, as above pointed out, it is admitted that the ward superintendents are the next grade below the assistant superintendent of streets in charge of street and alley

cleaning, unless the salary test alone is to determine the grade. This, we have sought to show, is not the sole test, but that the salary only determines the grade among those in the same line of employment. There are thirty-six of the ward superintendents in Chicago,—one for each ward. They are subject to change from one ward to another, so that it is not improbable that some of the older men in this position may have substantially covered the whole city during their service, thus giving them a general knowledge of conditions in the different parts of the city, the different classes of paving, the extent and character of the use to which the streets are put in different localities and the effect of such use on different street material,—in short, affording these officers exceptionally good opportunities to qualify for the position next above them in their line of employment.

Our conclusion is, that the ward superintendents, under the law and under the facts of this case, are next in order or grade to assistant superintendent of streets in charge of street and alley cleaning.

*Second*—The second question is whether the appellees' determination or announcement that it is not practicable to fill the position of assistant superintendent of streets in charge of street and alley cleaning is final and binding. We do not understand that the civil service commissioners are vested with any arbitrary discretion in this matter. Section 9 of the Civil Service act provides: "The commission shall by its rules provide for promotions in such classified service on the basis of ascertained merit and seniority in service and examination, and shall provide, in all cases where it is practicable, that vacancies shall be filled by promotion." The Standard Dictionary of the English language defines "practicable" as "that which can be put into practice; possible of execution or performance." This court has defined the word as "that which may be done, practiced or accomplished; that which is performable, feasible, possible."

(*Streeter* v. *Streeter*, 43 Ill. 155.)  The phrase in section 9
above quoted, "in all cases where it is practicable," adds but
little to the meaning of the section and takes little or noth-
ing from it.  If this phrase was eliminated entirely from the
statute it would mean substantially the same as it does with
it in.  The meaning in both cases is that the vacancies are
to be filled by promotion.  If this is not possible the office
is not to remain vacant and the wheels of government stop,
but the place is to be filled in another way and the functions
of the government go on.  In the case before us the deter-
mination of appellees that it was not practicable to fill the
place by promotion should not precede but come after a pro-
motional examination, where it is their duty to hold such
examination.  There are, it is admitted, at least fifteen ward
superintendents who are ready and willing to take the pro-
motional examination for the position to be filled.  If the
examination is held and two or more ward superintendents
qualify, then it will be practicable to appoint the one making
the highest grade.  Until such examination is held and these
persons given a chance to pass, the appellees cannot know
whether it is practicable to fill the place from the ward su-
perintendents.  The only prayer of the petition is that ap-
pellees be required to hold such promotional examination.
This, we think, it is their clear legal duty to do.  Appellees
have announced that it was not practicable to fill the position
by promotion, and the result is that a person has been ap-
pointed to this position who never served in any subordinate
position in this line of service.  His appointment was made
and re-made from time to time, until finally a general ex-
amination was held, and it happened that the same man who
had been holding under temporary appointments passed the
examination by a slightly better grade than his competitors,
and hence he was then appointed as a result of examination.
It is suggested that this officer is interested in this proceed-
ing and should be made a party.  We fail to see how he is
interested in the holding of the examination.  None of the

applicants may make the required grade on examination, and should they all fail the present incumbent could not be disturbed.

Our conclusion is that the facts present a case of a clear legal duty which is enforceable by *mandamus,* and that the Branch Appellate Court erred in reversing the judgment of the trial court.

The judgment of the Branch Appellate Court is reversed and that of the circuit court is affirmed.

*Judgment reversed.*