The People of the State of Illinois ex rel. Mary B. Gillespie, Appellee, v. Herman N. Bundesen et al., Appellants.

Gen. No. 37,165.

Opinion filed October 16, 1934.

WILLIAM H. SEXTON, Corporation Counsel, and FRANCIS J. VURPILLAT, Assistant Corporation Counsel, for appellants.

R. E. BLACKWOOD, for appellee.

MR. JUSTICE SCANLAN delivered the opinion of the court.

Petitioner (appellee) filed her second amended petition praying for a writ of mandamus to compel Herman N. Bundesen, President of the Board of Health of the City of Chicago, Dr. E. Dombrowski, Dr. Louis E. Schmidt, Dr. Edwin C. Jordan and Frank Bobrytzke, members of the Board of Health of said city, and Richard J. Collins, Joseph P. Geary and Leonard D. White, Civil Service Commissioners of said city, to assign her to the duties of supervising field nurse and to permit her to perform such duties henceforth, and that each and every one of said respondents (appellants) herein do all acts necessary to restore her to her duties as supervising field nurse. Respondents filed a general demurrer and special demurrer "jointly and separately," both of which were overruled, and the respondents electing to abide by their demurrers, the following judgment was thereupon entered:

"It Is Therefore Ordered And Adjudged By The Court that the writ of mandamus issue out of this court under the hand and seal thereof commanding Herman N. Bundesen, President of the Board of Health of the City of Chicago, Dr. E. Dombrowski, Dr. Louis. E. Schmidt, Dr. Edwin C. Jordon and Frank Bobrytzke, Members of the Board of Health of the City of Chicago, and Richard J. Collins, Joseph P. Geary and Leonard D. White, Civil Service Commissioners of the City of Chicago, to assign to your petitioner to the duties of supervising field nurse and permit her to perform such duties henceforth, and that each and every one of said defendants herein do all acts necessary to restore petitioner to her duties as supervising field nurse."

Paragraph 1 of the second amended petition is as follows:

"1. Your petitioner, Mary B. Gillespie, respectfully represents that for more than twenty years last

past she has been a regularly classified civil service employee of the City of Chicago in the department of health and that September 3, 1932, she was a regularly classified civil service employee in the City of Chicago in the classification known as Supervising Field Nurse; that she was appointed to this position during the month of May, 1918 from an eligible register whereupon her name appeared as Number 2 in the eligible list of twenty-one for said position and that she has worked as a supervising field nurse continuously since that time.''

Paragraph 2 pleads citizenship and residence of the petitioner. Paragraph 3 alleges that the City of Chicago is a municipal corporation, etc. Paragraph 4 alleges that said city duly adopted the Civil Service act. Paragraph 5 alleges the members of the Civil Service Commission. Paragraph 6 alleges that on September 1, 1932, and at all times thereafter the said Board of Health consisted of the following named persons: Herman N. Bundesen, president of said Board, and Dr. E. Dombrowski, Dr. Louis E. Schmidt, Dr. Edwin O. Jordan and Frank Bobrytzke, members of said Board. Paragraph 7 set out sections 8, 9, 10, 4, 14, 3, 6, 7, 13 and 31 of the Civil Service act. Paragraphs 8 to 21, inclusive, are as follows:

''8. Your petitioner further shows that the City Council of the City of Chicago, June 18, 1932, enacted an ordinance providing for eight Supervising Field Nurses in words and figures as follows:

'BUREAU OF PUBLIC HEALTH NURSING.

Salaries and wages—
    Superintendent of Nurses at $3,120.00
        per annum .....................$   2,455.08
    Supervising Field Nurse, 8 at $2,520.00
        per annum .....................  15,863.60
    Field Worker (Prevention of Blindness) at $2,100.00 per annum......   1,652.46

Field Nurse, 1,308 months at $170.00
  per month ...................... 174,972.25
Infant Welfare Attendant, 156 months
  at $95.00 per month.............. 11,661.65

60 A 5..............................$206,605.04'

"September 1, 1932 and at all times since there has existed a Board of Health of the City of Chicago, created by ordinance of the City of Chicago in the following language:

" 'ESTABLISHMENT OF BOARD OF HEALTH—APPOINTMENT OF MEMBERS.

" 'There is hereby created and established a board of health for the City of Chicago, which shall consist of five members of said board with the approval of the city council, for a term of two years from January first, and until their successors shall have been appointed and shall have qualified. Any vacancy that may occur in the membership of said board of health shall be filled through appointment by the Mayor, with the approval of the City Council for the unexpired term.

" 'The board of health shall have the management and control of all matters and things pertaining to the public health work of the city. The president of the board of health shall be a physician, duly licensed to practice medicine, and, subject to the direction and approval of the board of health, shall have charge of the administration of the staff of the board of health.'

"9. Your petitioner further shows the duties scheduled in the notice of examination held March 10, 1917 in which examination petitioner was qualified for appointment, were to have charge of and direct the work in a definitely assigned division of the city under the supervision of the superintendent of nurses.

"10. . . . shows that in February 1932 she was called to the office of the superintendent of nurses,

Miss Margaret M. Butler, and told, 'We want you to resign'; whereupon your petitioner stated, 'I do not intend to resign. I have heard no complaint of my work have you?' Said superintendent of nurses replied, 'There was no complaint,' whereupon the incident ended.

"11. . . . shows that September 1, 1932 she reported to the superintendent of nurses, Miss Margaret M. Butler, as directed by said superintendent at four o'clock P. M.; that, when your petitioner reported the said superintendent of nurses stated, 'There are no more life jobs in the department. Your assignment is changed from the appointment of supervising field nurse to social hygiene, which will be easier,' whereupon your petitioner responded, 'I have not complained of the work being hard.' Responding to this the superintendent of nurses stated, 'At least there will be no going up and down stairs for you,' to which your petitioner stated, 'Why there's nothing the matter with me, I am not using a cane or a crutch.' Nevertheless, the superintendent of nurses stated, 'You report Saturday morning, September 3rd, to the social hygiene division and that will be your permanent work from now on.'

"12. . . . shows that she did as directed and reported for duty at the social hygiene division September 3rd, September 6th and thereafter; that she was instructed by nurses already employed there how to perform the duties; that the superintendent of the municipal social hygiene division said to your petitioner, 'You are not a superviser. I had orders from the front office five minutes ago saying that Miss Jones is in charge and you must follow her instructions,' that thereafter, your petitioner was required to and did perform duties such as scrubbing in and about the clinic, fill and start sterilizers, wipe off furniture, clean stands and table tops.

"13. . . . . shows that September 15th she was told by the superintendent of nurses, Miss Groesbeck would instruct her, your petitioner, in preparing salvarsam for treatments; that slightly later, Miss Groesbeck directed your petitioner to assist Mrs. Morris in work she was performing, sterilizing instruments, making slides and the like.

"14. . . . shows that at no time during her assignment to the social hygiene division has she been called upon to do work directing other nurses in the performance of their duties, but on the contrary, your petitioner shows she has been required to take instructions from field nurses about the duties in the social hygiene division.

"15. . . . shows that her duties as a supervising field nurse consisted of instructing a group of field nurses consisting in numbers from eleven to twenty-one in the performance of their duties, accompanying them to residences and schools in their duties and advising with them on the performance of certain duties and reporting on the conduct, work and performance of duties of field nurses under the direction of your petitioner as a supervising field nurse.

"16. . . . shows weekly meetings of supervising field nurses are held so said supervising field nurses may confer with each other, discuss their work and problems and benefit by interchange of ideas and suggestions; that for more than fifteen years and until petitioner was assigned to her present duties she was given notice of such meetings and attended same but that since said present assignment petitioner has been given no notice of such meetings though petitioner is advised and states the fact to be that such conferences are still held.

"17. . . . shows that at no time since her assignment to the social hygiene division has she been permitted to direct the work of any group of nurses or perform any of the duties she previously performed

as a supervising field nurse; and that she has been constantly employed since being assigned to the social hygiene division in the venereal disease clinic with three other nurses performing the same duties that they performed and assisting them in the performance of said duties, all of which three nurses are field nurses; Clara Jones is in charge of the group of nurses of which petitioner is one and said Clara Jones performs the supervising duties of said group under the direction of the superintendent of nurses.

"18. . . . shows that she made written demand September 12, 1932, for restoration to her position of Supervising Field Nurse, said demand was in words and figures as follows:

" 'September 12, 1932.

Dr. Herman N. Bundesen,
President of the Board of Health,
City of Chicago, Illinois.
Dear Sir:

I respectfully demand reassignment to regular duties as Supervising Field Nurse.
Very truly yours,
MARY B. GILLESPIE
By (Signed) R. E. BLACKWOOD,
Attorney.'

"19. Your petitioner further shows that notwithstanding this demand her superior officers have failed and refused to restore her to the duties provided for her position in the civil service classification of supervising field nurse, her regular duties for fourteen years prior to the demand for her resignation.

"20. . . . shows that notwithstanding the failure of respondents herein to permit your petitioner to perform her regular duties said respondents have permitted two political sixty day appointees, Irene O'Donnell and Katherine Rickan, to perform duties of your petitioner's position (Supervising Field Nurse)

in violation of the laws made and provided; and that said Irene O'Donnell was first assigned to this work during your petitioner's vacation in the month of August, 1932.

"21. . . . shows she participated in an examination called and held by said Civil Service Commission and was appointed a supervising field nurse from the eligible list resulting from said examination under the law which provides:

" 'examinations shall be practical in their character and shall relate to those matters which will fairly test the relative capacity of the persons examined to discharge the duties of the positions to which they seek to be appointed.'

" 'said commission shall make rules to carry out the purposes of this act.'

" 'The commission shall investigate the enforcement of this act.'

" 'notice of the time and place and general scope of every examination shall be given.'

"and your petitioner shows said notice in this examination designated the duties of the position,

" 'to have charge of and direct the work in a definitely assigned division of the city under the supervision of the superintendent of nurses.'

"And so your petitioner shows she is now assigned in violation of the law while temporary political appointees are performing duties of the classification to which petitioner belongs."

The petitioner prays:

"That a writ of mandamus issue out of this court under the seal thereof commanding Herman N. Bundesen, President of the Board of Health of the City of Chicago, Dr. E. Dombrowski, Dr. Louis E. Schmidt, Dr. Edwin C. Jordan and Frank Bobrytzke, Members of the Board of Health of the City of Chicago, and Richard J. Collins, Joseph P. Geary and Leonard D.

White, Civil Service Commissioners of the City of Chicago, to assign your petitioner to the duties of supervising field nurse and permit her to perform such duties henceforth, and that each and every one of said defendants herein do all acts necessary to restore petitioner to her duties as supervising field nurse and that your petitioner may have such other and further relief in the premises as to this honorable court shall seem meet and is by law in such case made and provided.''

Respondents concede that the petition establishes ''the petitioner's character as a Supervising Field Nurse in the classified service of the City of Chicago working as an employee in the Department of Health,'' and that she performed the duties of such position for a period of 15 years. Their first major contention is that ''there is but one possible theory of cause of action that might exist in this petitioner's behalf and that is upon this state of facts, namely: that the Health Department wrongfully demoted the petitioner from her position as a civil service Supervising Field Nurse to the next lower grade or rank in that line of service, that is Field Nurse; reported the fact of such demotion or transfer to the civil service commission; and that the commission thereupon changed petitioner's status on the records, thereby making of petitioner a Field Nurse, instead of a Supervising Field Nurse, reducing her salary to that of the lower position, and causing petitioner to be assigned and transferred from the recognized duties of her rightful position to the duties of the lower position. Nothing short of all these facts properly alleged as a cause of action will be sufficient to withstand a general demurrer,'' and respondents argue that there are no facts alleged in the petition that would support such a theory. We cannot agree with this contention of respondents. In the well known contempt case of *People v. Mortenson and Chadsey*, 224 Ill. App. 221, it appears that after the

circuit court had determined, in *quo warranto* proceedings, that Chadsey was the duly qualified superintendent of schools, and had ordered his reinstatement, the respondents, in order to force him to resign from the position, attempted, by means of rules ·that were adopted by the Board of Education, to transfer all of the statutory duties, prerogatives and authority of Chadsey, as superintendent of schools, to one Mortenson, "the associate superintendent of schools," but they did not interfere with the title, salary nor desk of Chadsey. In the able opinion filed in the contempt case, Mr. Justice McSurely said (p. 231):

"Obviously the adoption of these rules by the board was a violation of the order of the court finding that Mr. Chadsey was the superintendent of schools and entitled to the office. *The office included not only the title, salary and room but all the duties, responsibilities, prerogatives and authority prescribed by the statute for such·office, and which were as much a part of the office as were the title and salary, and could no more be taken from him than could these. These rules purported to take away from Mr. Chadsey the substance of the office, leaving him merely the empty shell.* Respondents also attempted thereby to give Mr. Mortenson, who had been ousted by judgment from the office of superintendent, all the powers pertaining thereto, in face of the judgment. In other words, what the court ordered to be done was done only in part, and what it said should not be done was done. . . . The adoption of these rules was obviously an attempt to defeat or circumvent the judgment order of the circuit court, and was contemptuous." (Italics ours.) In *People ex rel. Brundage v. Peters,* 305 Ill. 223, an aftermath of the contempt case, the Supreme Court said (pp. 229, 230):

"They (the respondents) refused to obey the judgment and order of the court to restore Chadsey to the office of superintendent but assumed to elect Morten-

son as associate superintendent and adopted rules clothing him with the authority and duties of superintendent. Chadsey and his counsel made repeated efforts and demands that the judgment of the court be carried out and he be re-instated in his position and clothed with the duties of the office. By taking the authority and duties of the office from him and conferring them on Mortenson the contemners willfully and purposely ignored and refused to obey the judgment and order of the court. It seems palpable that contemners' acts were intended to defeat the judgment and were a defiance of it. Chadsey, finding himself ignored and prevented from the enjoyment of his office and the discharge of its duties, sent his written resignation, dated November 26, 1919, to the board. The contempt proceedings were instituted December 4, 1919. To say that under these circumstances the character of the proceedings was changed from civil contempts to criminal contempts and that the pardon was valid would be, in effect, giving approval to the acts of the board intended to defeat the judgment and force Chadsey out and Mortenson in as superintendent. It is perfectly plain the actions of the board of education were clearly in defiance of the judgment and were taken with the purpose of defeating it.''

In that case the Supreme Court took occasion to approve the ruling of the Appellate Court in the *Mortenson* case, that an office or position includes more than a title and salary, and that the petitioner was prevented, by the acts of the defendants, ''from the enjoyment of his office and the discharge of his duties.''

It appears from the allegations in the petition that respondent was asked to resign and that when she refused to comply with the request the duties that properly belong to her position were taken away from her and she was assigned to the performance of duties that belong to the position of a field nurse—a position inferior in dignity and responsibilities, and dissimilar

in its work. From the facts alleged it is evident that there is a clear distinction between the two sets of duties. This is evident from the fact that the Civil Service Commission deem it necessary to hold an examination to determine the eligibility of applicants for the position of supervising field nurse. If the instant contention were to be sustained then the Board of Health would have the power to take away from a civil service employee holding a high-grade position all of the duties properly belonging to such position and assign such employee to the duties of scrubbing floors and other work of a like kind. With such a power the board could nullify the purpose and spirit of the Civil Service Act.

Section 12 of the Civil Service Act provides that ''no officer or employee in the classified civil service of any city, who shall have been appointed under said rules and after said examination, shall be removed or discharged except for cause, upon written charges and after an opportunity to be heard in his own defense.'' (Par. 697, ch. 24, Cahill's Ill. St.) A position may be abolished by a failure to appropriate a fund for the salary of the office, where this is done in good faith and in the interest of economy, and in order to reduce expenses, and not for the purpose of evading the provisions of the Civil Service Act. (*Fitzsimmons v. O'Neill,* 214 Ill. 494; *City of Chicago v. People,* 114 Ill. App. 145.) If a position is abolished because of the alleged unfitness of the incumbent or because of any incapacity relating to the personnel of the incumbent, then such employee can be discharged in the manner provided by section 12.

''While the city has a right to actually and in good faith discontinue any position when the same becomes no longer necessary or useful, yet neither it nor the commission had any right to continue the position in force and to remove appellee until charges had been preferred against him and sustained by the commis-

sion in the manner provided by section 12 of the Civil Service law. (*City of Chicago v. Luthardt,* 191 Ill. 516.)" (*People v. Coffin,* 282 Ill. 599, 610.)

Respondents further contend that "although an executive officer or body exercising discretionary power may be compelled to act and to proceed to the performance of duty, such officer or body cannot, by means of the writ of mandamus, be controlled in the exercise of judgment and discretion to act in a particular manner," and they argue that what the respondents did was merely a discretionary exercise of power and that therefore the courts have no power to review their action in that regard. In support of this contention respondents cite, *inter alia,* the following from *People v. Errant,* 229 Ill. 56, 61:

"So long as the administrative agents are making an honest effort to carry out the provisions of the law in its true spirit they should be left free to exercise a reasonable discretion in all matters depending on information of details and local conditions."

Much of what we have heretofore said in connection with the first contention applies also to the instant one. Under the facts alleged in the petition respondents were not making an honest effort to carry out the provisions of the Civil Service law "in its true spirit." After the failure of the effort to force the petitioner to resign, respondents not only forced the petitioner to perform duties that do not belong to the position of supervising field nurse, but they caused two persons who had never qualified for the position of supervising field nurse to serve as supervising field nurses by temporary appointment, and, as the petitioner argues, these two persons "in the face of the present financial crisis are being paid an advance in salary while petitioner who seeks to be placed at her regular duties is being paid more than field nurses' compensation for performing field nurse duties." Petitioner further argues that the department heads, under the Civil

Service law, have no right or authority to assign employees outside of their classification; that under the act applicants for the positions are examined for particular duties, their names are listed, and they may be employed only in accordance with the law; that the duties of a position are defined in the classification and the examination call, and that certifications by the Civil Service Commission are made to apply to certain positions; that in the instant case the petitioner passed the examination for supervising field nurse, and if department heads were given the right contended for by respondents "the classification and examination for specific positions means nothing." Section 10 of the act provides the manner in which appointments to classified service shall be made. It further provides that *"to prevent the stoppage of public business, or to meet extraordinary exigencies,* the head of any department or office may, with the approval of the commission, make (a) temporary appointment to remain in force not exceeding sixty days, and only until regular appointments under the provisions of this Act can be made." Under the facts alleged in the petition, the so-called 60-day appointments of two persons to perform the duties of the petitioner's position, were made in violation of the provisions of section 10.

In the instant case respondents saw fit to stand by their demurrers, which admitted all facts well pleaded, and there is nothing in this case that would tend to support a claim that the acts of the respondents amounted to only a temporary change in petitioner's duties, made necessary by the grave financial conditions of the times.

The judgment of the circuit court of Cook county is affirmed.

*Affirmed.*

GRIDLEY, P. J., and SULLIVAN, J., concur.