Catherine Feeley, et al., Appellees, v. Timothy J. O'Connor et al., Appellants.

Gen. No. 47,288.

First District, Third Division.

April 9, 1958.

Rehearing denied May 7, 1958.

Released for publication May 9, 1958.

John C. Melaniphy, Corporation Counsel of city of Chicago (Sydney R. Drebin, Assistant Corporation

Counsel, and Robert J. Collins, Special Assistant Corporation Counsel, of counsel) for defendants-appellants.

Michael F. Ryan (Richard F. McPartlin, Jr., of counsel) for plaintiffs-appellees.

JUSTICE BRYANT delivered the opinion of the court.

This is an appeal from a declaratory judgment entered in the Superior Court of Cook county finding that the defendant Timothy J. O'Connor, Commissioner of Police of the city of Chicago, is without power or authority to order, direct or assign policewomen to perform the duties of matrons (police), or to integrate the duties of policewomen and matrons (police), or to assign matrons (police) to the performance of the duties of policewomen.

Plaintiffs filed their complaint on behalf of themselves as policewomen and as representatives of the class of policewomen in the classified civil service of the Police Department of the city of Chicago. They alleged the passage of an act to regulate the civil service of cities, and that the defendants William A. Lee, Albert W. Williams and John J. Ahern constituted, at the time of the filing of the complaint, the Civil Service Commission of the city of Chicago; that both policewoman and matron (police) are classified by the Civil Service Commission as being in Branch IV, Class S and Grade 3, indicating that Branch IV embraces positions relating to public safety, that Class S, Police Service, embraces positions in the active ranks of the police department and positions directly related to the performance of police duty, and that Grade 3 indicates certain specific positions in the above branch and class, and that for the year 1956 the appropriation ordinances passed by the City Council of the city of Chicago gave matrons (police) and

124

policewomen exactly the same salaries, varying alike for each year of service. They also allege that matrons (police) are appointed by the mayor for a term of one year. They then charge that the defendant Commissioner of Police of the city of Chicago, without any authority of the City Council or of the Civil Service Commission of the city of Chicago, on January 3, 1957 entered a general order in regard to the rules and regulations of the Department of Police of the city of Chicago whereby all of the previous rules relating to matron lockup keeper and policewomen's section, were rescinded and new rules entered which created a Women's Bureau, consisting of policewomen and matrons (police), and provided for their duties, to include the duties heretofore assigned to matron lockup keeper and policewomen's section, and certain additional duties, and for the assignment of the personnel of the Women's Bureau, consisting of policewomen and matrons (police), to any of such duties. They further allege that as policewomen they cannot lawfully be assigned to do any of the duties of matrons (police). They further allege that although matrons (police) are of the same service, grade and class as policewomen, they do not have the same rank, and, because of that situation, matrons (police) are not eligible to take promotional examinations for police sergeants. Plaintiffs, policewomen of the city of Chicago, therefore prayed that the court adjudicate that the defendant Timothy J. O'Connor, Commissioner of the Police of Chicago, was without power to issue the order fixing the rules and regulations of the Department of Police creating a Women's Bureau and assigning thereto policewomen and matrons (police) and fixing the duties of such policewomen and matrons (police) as members of the Women's Bureau of the police of the city of Chicago, and that said defendant was without power to merge, amalgamate, consolidate or integrate policewomen and matrons (police) into a Wom-

en's Bureau and designate their duties under that bureau.

Thereafter, Timothy J. O'Connor, Commissioner of Police, William A. Lee, Albert W. Williams and John J. Ahern, Civil Service Commissioners of the city of Chicago, filed their motion to dismiss the complaint, urging that the court had no jurisdiction over the subject matter in that it has no power or authority to interfere in the administration of a public office; that it appears from the complaint that the plaintiffs are policewomen and as such are subject to all the duties pertaining to said position, which duties are inclusive of the duties heretofore performed by matrons (police), and that the court has no jurisdiction to determine whether the Commissioner of Police has properly assigned the duties of the police matrons.

Thereafter, Dolores Sheehan was by order of court substituted for defendant William A. Lee, she having been appointed to the Civil Service Commission in place of William A. Lee.

After a hearing upon the motion to dismiss, the court denied the motion and entered the declaratory judgment heretofore referred to.

It is to be noted that although the members of the Civil Service Commission of the city of Chicago are made parties defendant in this proceeding, the only relief granted by the declaratory judgment is directed to the Commissioner of Police of the city of Chicago, who is also a defendant, and that it attempts to define and limit his capacity to make rules and regulations in the administration of the department and the assignment of duties within that department.

It has been urged that there is a basic difference in the office of policewomen and matrons (police) in that sec. 9—51, art. 9, Cities and Villages Act (Ill. Rev. Stats. 1955, chap. 24), provides for the appointment by the mayor, subject to confirmation by the city council, of police matrons in cities having 16,000 or more

inhabitants. It is to be noted that the section further provides that police matrons are to be appointed for the term of one year, and that in cities over 50,000 they need not be confirmed by the council; that they shall have charge of all female prisoners. From the context it is evident that the principal intent of the act was that females should be in charge of female prisoners.

The Department of Police of the city of Chicago is organized and authorized by the Municipal Code passed by the city council. The offices within the Police Department of the city of Chicago are created by chapter 11, section 2, of that code. That chapter and section, relating to the personnel of the police department, reads in part as follows:

"There are hereby created the offices of commissioner of police, . . . patrolwomen, . . . matrons, . . . . These . . . shall constitute the police force of the city."

It is to be noted that the city council does not create a position of policewomen, but of patrolwomen. Technically it might be said that there is no such office as policewomen, but both within the police department and in the Civil Service Commission, "policewomen" has been used as synonymous with "patrolwomen." Logically, of course, the term "policewomen" is a more generic term and would include any women engaged in police work. However, its other usage has been so long established that for the purpose of this opinion it may be considered that the term policewomen is used to mean, technically, the office of patrolwomen created by the ordinance of the city of Chicago. Since the office of patrolwomen and of matrons (police) are created by the same chapter and section of the Municipal Code of Chicago, and since both offices have been classified by the Civil Service Commission, it is clear that the tenure of both offices is the same and rests on the same bases. If the question were ever raised as

to whether the city of Chicago in the creation of its police department had complied with the statutes of the State of Illinois in so far as it related to the creation of female personnel for the purpose of the protection of female prisoners, it could probably be successfully urged that chapter 11, section 2, which created the positions of patrolwomen and matrons (police), complied with that provision of the statute. But certainly in no other way are the rights of matrons (police), created by chapter 11, section 2 of the Municipal Code and classified by the Civil Service Commission of the city of Chicago, controlled or governed by sec. 9—51, art. 9, chap. 24, of the statute.

There being no difference in the manner in which the offices of policewomen and matrons (police) were created, no difference in the tenure, no difference in the salary and no difference in the classification under the Civil Service Commission, there remains to be considered only the question if there are any other rights in the positions which the plaintiffs hold which may limit the right of the Commissioner of Police to assign duties and to integrate and reorganize the Department of Police in so far as the women police personnel is concerned. It is obvious that any rights which the plaintiffs would have in relation to their jobs, would be grounded in their civil service status.

Chapter 24½ (Civil Service), Ill. Rev. Stats. 1955, par. 41, provides in part as follows:

"Said commissioners shall classify all the offices and places of employment in such city with reference to the examinations hereinafter provided for, except those offices and places excluded by Section 11 of this Act."

It is under that power that the Civil Service Commission of the city of Chicago makes its classification. The civil service rules which were in effect on Decem-

ber 31, 1953 show that Rule I relates to classification, and that Branch IV of that classification relates to Public Safety, and Class S relates to Police Service, and that Grade 3 relates to positions of intermediate responsibility in that service and branch, and that both policewomen and matrons (police) are classified Branch IV, Class S, Grade 3. The record also discloses that the salaries for policewomen and matrons (police) are exactly the same.

Rule V of the Civil Service Commission in regard to promotions, states that they shall be made from persons selected by examination from those in the next lower rank. That is in accord with chapter 24½ (Civil Service), Ill. Rev. Stats., par. 47.

The plaintiffs assert there is a difference in rank between policewomen and matrons (police). However, rank is never used as a basic term of classification by the Civil Service Commission. We must therefore consider the question of rank. Does it exist under the Civil Service Commission classification of jobs? If so, to what situations does rank apply, and what is the extent of the plaintiffs' interest in rank, if it exists? Does the question of rank constitute a limitation upon the powers of the administrator of an executive office in regard to assignment of duties? It is clear that the rank referred to is one which arises out of the civil service status, and does not refer to rank within the police department.

With the exception of section 41.1, which relates to the status of park district employees transferred to the city, there appears to be only one place in the civil service statute which used the term "rank." In section 47 (Sec. 9 of the act) it is said:

"All examinations for promotion shall be competitive among such members of the *next lower rank* as desire to submit themselves to such examination . . . ." (Italics ours.)

129

In the following section 48 (sec. 10 of the act) the words "class or grade" are used in the following manner:

"The head of the department or office in which a position classified under this act is to be filled shall notify said commission of that fact, and said commission shall certify to the appointing officer the name and address of the candidate standing highest upon the register for the *class or grade* to which said position belongs . . . ." (Italics ours.)

It might be thought that when the statute referred to in one section to "next lower rank" for *taking examinations,* and in the next section, for *appointments,* to "class or grade," the use of *grade* or *rank* were synonymous. In fact, that was certainly the trend of the early rules and decisions. In 1902, in the case of Ptacek v. People, 194 Ill. 125, 132, the Supreme Court said, quoting the then section 1, rule 7 of the Civil Service Commission:

"All promotions in the classified service, unless herein otherwise provided, shall be from grade to grade, and shall be made upon voluntary, open, competitive examination. Competition in such examination shall be limited to the employees in the next lower grade of the same division, serving in the department in which the position exists . . . ."

In 1919, in the case of People ex rel. Loftus v. Frazier, 214 Ill. App. 664 (abst.), a case relating to promotional examinations in the police department, the court said: "The commissioners by a rule have assumed to interpret the words 'rank' and 'grade' as used in the act to be synonymous." Later in 1919 this court in People ex rel. Lally v. Frazier, 219 Ill. App. 234, after quoting section 9 of the Civil Service Act, which was then apparently the same as it is now, in that "all examinations for promotion shall be competitive among such members of the next lower rank as desire to

130

submit themselves to such examination," discussed the question of grade and rank, as follows:

"In the instant case no argument is made that the rank or grade of foreman is next higher than that of water pipe inspector, nor is any point made that the classification as made by the Commissioners is not in all respects proper. In the classification as made by the Civil Service Commissioners, assistant foreman was the next lower grade to that of foreman. Foremen were in Class K, Grade 3, and the next lower grade or rank was assistant foreman, Class K, Grade 2. Manning was not in this class at all. He was in Class H, Grade 3, and, therefore, was not in the next lower rank or grade. We hold that to entitle a person to take a promotional examination such person must be in the next lower grade and his duties must be of a character similar to those of the position contemplated by the next higher grade."

It is to be noted that the court spoke of "grade or rank" as alternative, or the same, but did add, as an additional qualification, the similarity of duties. That might relate to Class of Service under the civil service classification.

The rule of the Civil Service Commission in effect today (Rule I, Section 5) is as follows:

"Grade and Rank Contrasted. Grade is more inclusive than rank within the meaning of these rules. In situations where the ascertained status of positions herein classified into grades accords to one group or individual a definite or acknowledged standing over another the recognition of rank shall take precedence over grade. The Commission shall define rank for examinations and appointments in its official notices of examinations and in the minutes of its proceedings and shall determine in each instance the distinction between ranks, the necessity for examination from rank to rank and eligibility thereto. Rank shall be

held to include only those offices and places of employment performing the same particular kind and character of work and of equal authority and precedency."

This apparently is an attempt to write into a rule the additional qualification to grade which was mentioned in the above quotation from People ex rel. Lally v. Frazier, 219 Ill. App. 234, which was there expressed in these words: ". . . and his duties must be of a character similar to those of the position contemplated by the next higher grade." The rule seems to indicate an intention to further subdivide the grade established by the classification of the Civil Service Commission into ranks, but there is no record that the commission has ever so subdivided the grades established in their classification, and there would seem to be no statutory authorization for such further subdivision. Elsewhere in Rule I, particularly in section 6, the phrase "grades or ranks" is used repeatedly, apparently in the alternative. Section 6 relates to compensation; and the appropriation ordinances, as shown by record, do not indicate any attempt, in so far as compensation is concerned, to make a distinction between grade or rank, but rather it would seem that the expression here was used in the alternative to mean the same thing. The same is true of sections 7 and 8 of Rule I, where "grade or rank" is used in the same manner. But in Rule V, which relates to Promotion, Efficiency and Seniority, there is a return to the isolated statutory language, by use of the expression "rank," though accompanied by the words "or grade," and then following it immediately by the expression "next lower rank" or "next higher rank." There seems to be no other use of the word "rank" in the rules which would be helpful in determining whether it is used as an alternative to "grade" or as an addition.

132

Was there a statutory intent in the Civil Service Act to create, after uniform classification, the power to make an additional criterion of "rank" separate and distinct from the general power to make classification? Has the Civil Service Commission by its rules, within its power, created this additional category? Did this court in People ex rel. Lally v. Frazier, supra, by using the expression "his duties must be of a character similar to those of the position contemplated by the next higher grade," intend to create a new division? If the answer to all three questions is in the affirmative and "rank" is a separate classification, there remains the question in this case whether the character of the duties of policewomen and matrons (police) is so dissimilar that they would have different "ranks." Both are engaged in police work with women. Their duties seem no more divergent than duties of patrolmen, all of whom are in the same rank and take the same promotional examination for police sergeant. It is clear that if there is such a distinction, it applies only to the civil service status of the employees and is specially limited to their rights to take promotional examinations.

In the case of People ex rel. Gillespie v. Bundesen, 277 Ill. App. 169, where a *supervising field nurse* was arbitrarily removed from the duties which she had been performing and assigned to the duties of *field nurse,* which was an entirely different position which differed in pay from the supervising field nurse, although the relator's pay was not disturbed, and where she had first been asked to resign but refused, it was held that this arbitrary action was, in effect, an abolishment of the position which she held and that that could not be done arbitrarily. The court, in so holding, distinguished the Gillespie case from the language in People ex rel. Williams v. Errant, 229 Ill. 56, 61, which was urged upon the court in the Gillespie

133

case, as follows: "So long as the administrative agents are making an honest effort to carry out the provisions of the law in its true spirit they should be left free to exercise a reasonable discretion in all matters depending on information of details and local conditions." The facts in the Gillespie case are clearly not the same as those in the instant case. In the instant case the reorganization is a proposed reorganization of the women's division of the police department. There is not the slightest evidence that there is any intent to harm anyone in her civil service status.

In People ex rel. Kenny v. Fornof, 343 Ill. App. 73, the relator had been employed as a medical social worker by the Board of Trustees of the University of Illinois. She was the only person so employed for a number of years. It was later determined by the Board of Trustees to create a new position, called the Director of Social Service, in order to develop the social service department in an academic way in addition to the service approach. A stranger was brought into the department and made director of the department. The relator claimed that she was entitled to take an examination for that position as a promotional matter, as she was a member of the civil service of the University of Illinois. The relator alleged that she had been "illegally demoted and deprived of the performance of her duties as head of the social service department of the research and educational hospitals of the University of Illinois." Judge Friend, on page 90, said:

"The pertinent inquiry is whether some or any of the duties and responsibilities of a civil service position may be transferred and assigned as functions of a new position created in good faith without intent to evade or circumvent the civil service law. To hold that such a transfer cannot be effected would be tantamount to determining that civil service employees have a vested right to the continued performance of any duties and responsibilities once assigned to them,

134

and as counsel for defendants say, 'Jobs and positions would be frozen at the levels at which they are established; reorganizations for the better administration of public bodies would be made impossible and efficiency and progress halted.' The courts of this and other states have uniformly held that such transfers of functions and duties as were effected in this proceeding may be made, and that the same are not contrary to the letter or spirit of the civil service laws. McNeil v. Mayor and City Council of Peabody, 297 Mass. 499, 9 N.E.(2d) 566, involved a reorganization of certain civil service positions of the City of Peabody, and in discussing the right of the city to so reorganize, the court pertinently observed that while 'the purpose of civil service legislation was to protect efficient public employees from partisan political control, . . . it was not designed to prevent a city from undertaking in good faith a reorganization of a municipal department in order to promote effectiveness and economy. (Citing various Massachusetts decisions.)' "

What the Commissioner of Police in the instant case did appears to be entirely justified by the decision in the Fornof case.

In the case of People ex rel. White v. Hurley, 1 Ill.App.2d 442, it was held that in so far as similarities of duties are concerned as a question pertaining to the right to take promotional examinations, it was the duties as set forth in the civil service classification, rather than the duties actually, performed, which controlled. In that case a man who had been an acting supervising dairy inspector was refused the right to take the examination for supervising dairy inspector by the Civil Service Commission, and that action was upheld by this court. The man had been engaged in milk inspection since 1924. His civil service classification at that time had been that of food inspector, and at that time there was no such position as dairy in-

spector. Later the position of dairy inspector was created, and numerous food inspectors engaged in dairy inspection work had been transferred to the rank of dairy inspector without further examination. The relator had not been so transferred. In 1951 the Civil Service Commission issued a call for holding a promotional examination for the position of supervising dairy inspector, the exact position which the relator had been holding, and prescribed that dairy inspectors be eligible to take the examination. The relator was allowed to take the examination pending further consideration of his application to do so, although classified as a food inspector, and subsequently he was denied the appointment. The court in passing upon the propriety of that denial, said:

"While it is true that both Food Inspectors and Dairy Inspectors were in the same branch, class and grade, it is set forth in the complaint that their respective duties were different; that Dairy Inspectors are now confined to milk inspection. It was, therefore, clearly sound civil service practice and a faithful discharge of their duties under the law for the Commission to restrict the promotional examination to Dairy Inspectors who were in Branch III, Class O, Grade 3."

It is clear that if all the doubts in this case were resolved in favor of the plaintiffs: that is, that there were a separate classification under the civil service rules and statute known as "rank"; if that classification were based upon the similarity of the duties performed by the civil service employee; if it were determined that the duties performed by policewomen and matrons (police) were so dissimilar that they would fall into different "ranks" it would still be true that the ranks would be determined by the civil service grade and position and the duties appurtenant thereto, and the performance by the plaintiffs of any duties assigned to them by the Department of Police would not prejudice any of their rights in their position

under under the civil service law. If there is a rank, based upon similarity of duties, which affects promotional examinations, it is the similarity of duties in the classification of the job, and not in the duties actually performed in the administration of the police department.

In addition to the ruling in our state (People ex rel. Kenny v. Fornof, 343 Ill. App. 73), there are numerous cases throughout other jurisdictions to the effect that the purpose of civil service legislation was to protect efficient public employees from partisan control, and it was not designed to prevent reorganization of a department to promote effectiveness and economy, and that civil service employees have no vested right to the performance of any duties or responsibilities once assigned to them. Kinney v. Nares, 125 Misc. 435, 211 N. Y. S. 714; Yarn v. City of Atlanta, 47 S.E.2d (Ga.) 556; Riley v. Mayor, etc., of N. Y., 96 N. Y. 331; State (McManus) v. Board of Police Com'rs of the City of Newark, 6 Atl. (N. J.) 882.

As long as none of the rights of the plaintiffs under their civil service status has been changed by the action of the Commissioner of Police, and the reorganization of the police department as proposed by the Commissioner of Police is clearly within the administrative powers of the head of such department, there is no legal reason to deprive the Commissioner of Police of that power.

The declaratory judgment entered below is reversed.

Reversed.

BURKE, P. J. and FRIEND, J., concur.