## CHARLESTON.

Beech Fork Coal Co. *v.* Pocahontas Corporation

(No. 6549)

Submitted February 11, 1930.   Decided April 8, 1930.

40

*Harman & Howard* and *French, Easley & Easley*, for appellant.

*Joseph M. Crockett* and *Greever & Gillispie*, for appellee.

LITZ, JUDGE:

This is a suit in equity by a tenant to enjoin an action in ejectment by the landlord for possession of the demised premises. From a decree dismissing its bill, plaintiff appeals.

The tenancy originated in a written lease dated September 30, 1916, from Beech Fork Coal Land Corporation (predecessor of defendant, the Pocahontas Corporation), to the plaintiff, Beech Fork Coal Company. The pertinent parts of the lease deed or contract follow: "That in consideration of the terms, conditions, covenants and stipulations hereinafter set forth to be performed and observed by Beech Fork Coal Company, Lessee, the said Beech Fork Coal Land Corporation, Lessor, does hereby demise, let and lease to the said Beech Fork Coal Company, Lessee, for a period of ten (10) years from this date, with the right to the said Lessee or assigns to renew the same on the same terms and conditions, from time to time, for like periods of ten (10) years, until all the coal on the land hereinafter mentioned is mined, the sole and exclusive right and privilege of mining from any workable veins or seams of coal in, upon or underlying all that certain tract or parcel of land, containing three hundred and five and 83/100 (305.83 A.) acres," situate in McDowell County, West Virginia, and fully described in the instrument. "* * * This lease is made only and solely for the purpose of mining and shipping coal from the above mentioned veins or seams of coal; and also the right to manufacture coke from the coal mined from said veins

or seams of coal, and to ship the same, if the Lessee so desires.''
The lessee ''agrees to pay the lessor, during the continuance
of this lease, as rental, the following royalties: thirteen and
39/100 cents for each and every ton of 2000 pounds of coal
mined, dug, carried away from or used on'' the demised prem-
ises. The lessee ''will commence work upon its mining opera-
tion at once, and will work and mine coal in the most effectual,
workmanlike and proper manner, complying in every respect
with the laws now existing or hereafter passed by the State
of West Virginia, and of the United States.'' The lessee shall
not, ''on abandoning any room, working or other opening,
* * * leave any available coal standing which is not rea-
sonably necessary to be left, to properly secure the work.''
The lessee shall ''pay to the Lessor at least the sum of One
Thousand ($1,000.00) Dollars for the year beginning when
the first shipment of coal or coke is made from said land, or
*from any other lands used in connection with said land, in
the contemplation of this lease,* and at least the sum of Two
Thousand ($2,000.00) Dollars for the next year thereafter, and
at least the sum of Three Thousand ($3,000.00) Dollars for
each and every year thereafter during the term of this lease, or
any renewal thereof, as a minimum rental under this lease,
whether the quantity of coal mined in each respective year
shall produce that amount of rental or not. * * *'' The
lessee shall ''pay all taxes that may be assessed against the
above described land and the improvements thereon, and upon
the coal mined or coke manufactured during the continuance of
this lease, and also all other assessments upon the same by court
or operation of law, whatsoever, when and as the same shall
become due.'' The lessee shall have the right, without charge,
to transport ''into, over, through and under the leased prem-
ises,'' manufacture into coke thereon, and ship therefrom, coal
mined by it from other lands, after it has mined the principal
part of the No. 3 vein of coal on the leased premises, and prior
thereto so long as it shall mine and ship as many tons of coal
per annum from the leased premises as it mines and ships from
other lands, ''it being the object and intention of this lease to
have the coal on the land herein leased mined out as quickly as
practicable''; if for any year before mining the principal part

of the No. 3 vein of coal on the leased premises the lessee shall mine a greater amount of coal from other lands, it shall pay the lessor two cents per ton for all coal mined on other lands during the year; "as long as the lessee, its successors or assigns, shall use the leased premises, or any part thereof, for any purpose, whatever, including any railroad right of way, the Lessee, its successors or assigns, as a condition precedent to such use, shall pay to the Lessors, its successors or assigns, the minimum rental of Three Thousand ($3,000.00) Dollars per year, payable as above set out, even though all of the coal on the premises herein leased shall have been mined and taken from said land. *  *· *'' The lessee shall "have and keep the store building and dwelling now situate on the leased premises insured against damage and loss by fire to the full extent of its insurable; value; and in case of damage or loss by fire, the insurance money is to be used in replacing such building or buildings so damaged or destroyed; and, at the expiration of this lease, such buildings shall be treated and considered as the property of the Lessor.  *  *  *  All of the timber on said leased premises, measuring fifteen (15) inches and over in diameter, measured under the bark eighteen (18) inches above the ground, together with the right to cut, manufacture, and remove said timber, are hereby reserved and accepted by the Lessor; and there is also excepted and reserved the right to stack the lumber manufactured from said timber on said land until marketed, this exception and reservation of said timber and said rights to extend during the entire life of this lease, and of any renewal or renewals thereof.  *  *  *  If, at any time during the continuance of this lease, the Lessee should be prevented from operating the mines on the leased premises on account of, or by reason of, general labor strikes prevailing through the coal field in which said leased premises are located, and during the year of any such strike or strikes the Lessee shall fail to mine enough coal to amount to the minimum royalty hereunder, then the amount of minimum royalty herein provided for shall be abated, on a pro rata basis, for such part of the years as such strike or strikes shall continue, provided that in no year shall such abatement be made for a longer period than three months, it being understood that in no event or events shall the annual,

minimum royalty be abated in excess of one-fourth thereof, but there shall, of course, be no abatement of royalty on coal actually mined. Contemporaneously herewith, the Lessor has, by separate writing given to the Lessee the exclusive right and privilege of purchasing the leased premises herein mentioned, in fee simple, at any time within one year from June 14th, 1916, at the price and upon the terms [of Fifty Thousand ($50,-000.00) Dollars, Twenty Thousand ($20,000.00) Dollars cash, balance in two equal installments in one and two years, respectively] set forth in said writing, and the Lessor has also in said writing given to the Lessee the exclusive right and privilege of purchasing the timber, and rights and privileges hereinabove reserved, within six months from June 14th, 1916, at the price and on the terms set forth in said writing. * * * The failure on the part of the Lessee to keep and perform any of the terms, conditions, covenants, and agreements herein contained, and on the part of the Lessee to be kept, shall, ipso facto, work a forfeiture of this lease, and the said lessor may at once re-enter and take possession of the leasehold, and a waiver by the lessor of any particular cause of forfeiture shall not prevent the forfeiture and cancellation of this lease for any other cause of forfeiture, or for the same cause at any other time. * * * If the Lessee, its successors or assigns, shall forfeit this lease by failing to keep and perform any of the covenants, stipulations, agreements and conditions herein contained, or shall abandon said lease before all of the coal in the workable seams or veins on the land herein leased shall have been mined in the manner herein provided, then, in any of such events, the Lessee, its successors or assigns, shall not have the right to remove from the leased premises any structures, buildings, fixtures, or improvements thereon, but the same shall ipso facto revert to, and become the property of, the Lessor, its successors or assigns, without any valuation or payment therefor.''

The lease was executed in fulfillment of a written option to lease *the land* ''for the purpose of mining all workable veins or seams of coal in, upon or underlying'' the same.

The coal area of the leased premises, containing 94 acres, is separated into three parts of 14 acres, 15 acres, and 65 acres, respectively.

The lessee having installed a coal mining plant on the leased premises costing, as it contends, the sum of $70,000, mined and shipped coal from the 14 acres area as follows: 1917, 12,671 tons; 1918, 17,123 tons; 1919, 13,025 tons; 1920, 10,472 tons; 1921, 2,921 tons; 1922, 2,801 tons; 1923, 3,016 tons; 1924, none; 1925, none; 1926, 482 tons.

The mining since 1920 has resulted in loss to the lessee. It has conducted a mercantile business in the store building referred to in the lease, and rented houses, constructed on the leased premises for its mining operations, to outside persons when not needed for its own employees. In the meantime, by lease dated June 1, 1917, the plaintiff leased from the New River & Pocahontas Consolidated Coal Company 29.53 acres of coal, adjoining the leased premises in controversy, which it has also mined, and transported over the said 305.83 acres tract, as follows: 1917, none; 1918, none; 1919, none; 1920, 8,721 tons; 1921, 7,478 tons; 1922, 6,662 tons; 1923, 10,574 tons; 1924, 2,688 tons; 1925, 7,016 tons; 1926, 7,746 tons.

By deed dated December 24, 1924, the Beech Fork Coal Land Corporation conveyed the 305.83 acres tract to the Pocahontas Corporation, the latter having previously acquired all of the capital stock of the former in March of that year. Thereafter the plaintiff paid the Pocahontas Corporation the annual minimum royalty of $3,000 per year until October 28, 1926, when the latter refused to accept further royalties on the ground that the lease had been forfeited. On September 15, 1926, the lessee mailed the defendant notice, in writing of its election to continue the lease for a period of ten years, and on October 28, succeeding, the defendant served the plaintiff with written notice, asserting forfeiture of the lease and demanding possession of the leased premises. In November, following, the defendant instituted an action in ejectment against the plaintiff for the possession of the premises. This suit was then instituted to enjoin the action in ejectment and to compel the renewal or extension of the lease.

The grounds of forfeiture, relied on by the defendant, are: (1) Failure of the plaintiff to pay the charge of two cents per ton for conveying over the leased premises coal mined from other lands; (2) failure of the lessee to mine the coal in the

most workmanlike and proper manner; (3) failure of the lessee to mine the coal on the leased premises as quickly as practicable; (4) the impracticability of mining the remaining coal on the leased premises; and (5) unauthorized use of the leased premises by the lessee.

The unpaid charge of two cents per ton for transporting coal from other lands over the leased premises amounts to $421.64. The time was not fixed in the lease deed, nor has there been any demand by the lessor for its payment. Nonpayment by the lessee, under these circumstances, is not ground for forfeiture of the lease. "Equity will generally relieve from a forfeiture, claimed for failure to pay rent, when the default was not wilful, and application for relief is seasonably made." *Engel* v. *Eastern Oil Co.*, 100 W. Va. 301, 130 S. E. 491. In the opinion it is stated: "Equity will relieve from forfeiture in such case. 'It is well settled that, where the agreement secured is simply one for the payment of money, a forfeiture either of lands, chattels, securities or money, incurred by its nonperformance, will be set aside on behalf of the defaulting party, or relieved against in any other manner made necessary by the circumstances of the case on payment of the debt, interest and costs, if any have accrued, unless by his inequitable conduct he has debarred himself from the remedial right, or unless the remedy is prohibited under the special circumstances of the case by some other controlling doctrine of equity.' Pomeroy, par. 450. 'In cases of forfeiture for nonperformance of pecuniary covenants, relief in equity goes as a matter of course, where compensation may be made.' *Wheeling & E. G. Ry Co.* v. *Triadelphia*, 58 W. Va. 487, 516, 52 S. E. 499, 511, 4 L. R. A. (N. S.) 321; *Spies* v. *Ry. Co.*, [60 W. Va. 389, 55 S. E. 464] supra; *Pheasant* v. *Hanna*, [63 W. Va. 613, 60 S. E. 618], supra; *South Penn Oil Co.* v. *Edgell*, 48 W. Va. 348, 37 S. E. 596, 86 Am. St. Rep. 43; *Lynch* v. *Versailles Fuel Gas Co.*, 165 Pa. St. 518, 30 A. 984. This right of relief from a forfeiture for failure to pay the rent in arrear is also specifically recognized in section 17, Chapter 93 of the Code." In 16 R. C. L. 1146, the rule is stated thus: "In the exercise of their power to relieve

from forfeiture, courts of equity from an early date have assumed jurisdiction to relieve tenants from forfeiture for non-payment of rent, requiring as a condition of such relief that the tenant pay all rents in arrears, with interest, the theory being that the provision for forfeiture is primarily a security and payment all that the lessor is equitably entitled to demand, and that the allowance of interest forms a certain rule of compensation for the delay.''

The claim that the lease has been forfeited because of improper mining is also without merit; no coal of consequence has been mined since the defendant acquired title to the leased premises; the previous mining, though improperly conducted cannot now be considered as a ground of forfeiture; the original lessor acquiesced in the method of mining employed by the lessee; the conveyance of the leased premises by the former to the defendant (which recognized the existence of the lease) did not vest in the grantee any rights of forfeiture then existing in favor of the grantor; and the defendant did not complain of the method of mining employed by the lessee prior to the notice of forfeiture of October 28, 1926. It was held in *Big Vein Pocahontas Co.* v. *Browning,* 137 Va. 34, 120 S. E. 247, that the lessor of coal lands, having failed as the work progressed to complain of the method of mining employed by the lessee, was estopped to claim royalties for available and merchantable coal which could and would have been removed had seasonable complaint been made. ''A lessor's existing right to reenter the leased premises for a forfeiture arising through a breach of one of the clauses of a lease is not assignable. Hence where the lessor had done no act to indicate his purpose of avoiding the lease by reason of the breach, his grantee cannot enforce the forfeiture.'' 16 R. C. L. 1144.

The lease has not been forfeited for the failure of the lessee to mine the coal ''as quickly as practicable.'' This expression, contained in the provision of the lease relating to the use of the leased premises for removing coal from adjoining lands, indicates an unwillingness on the part of the lessor to permit the mining of coal by the lessee from adjoining lands to the exclusion of mining on the leased premises. In deter-

mining the meaning of the quoted phrase, it is necessary to consider the lease deed as a whole and particularly the provision relating to the minimum rental or royalty. There is no claim that the parties to the lease did not correctly appraise the quantity and quality of the coal underlying the leased premises. It cannot, therefore, be fairly presumed that they considered the coal of such thickness and quality as would justify continuous mining, otherwise there would have been little necessity for requiring the payment of a minimum rental or royalty amounting to the sum of $32 per acre annually or an income on the total valuation of the entire tract of 305.83 acres of 6 per centum interest free from taxes. In *Wooters* v. *I. & G. N. R. Co.*, 54 Tex. 294, a railroad company had obligated itself to locate its depot at the ''nearest practicable'' point within one mile of a county courthouse. In construing the word ''practicable'' the court held: (1) The word ''practicable'' was not used in the contract as synonymous with ''possible.'' (2) The road was only bound to locate its depot at the nearest point within one mile of the courthouse, at which it could be done at a reasonable and ordinary cost, with reference to all the circumstances under which it was to be done and in view of the objects and purposes inducing the contract. In the opinion, it is stated: ''Plainly the word 'practicable' was not used in this contract as synonymous with 'possible,' but was used and understood by the parties to this contract in its usual and ordinary sense, as binding appellee to locate its depot at the nearest point within a mile of the courthouse, at which it could be done at a reasonable and ordinary cost, with reference to all the circumstances under which it was to be done, and in view of the object and purpose inducing the contract.'' The usual and ordinary meaning of the word ''practicable,'' according to Webster, is: ''That may be practiced or performed; capable of being put into practice, done, or accomplished; feasible; as, a practicable method; a practicable aim; a practicable good.'' The parties did not therefore intend, by the use of the phrase, ''as quickly as practicable,'' that the lessee would be required to prosecute the mining continuously at material loss or suffer

a forfeiture of the lease for failing to do so. *Clintwood Coal Corporation* v. *Turner*, 133 Va. 464, 114 S. E. 117, 120, and *Chauvenet* v. *Person*, 217 Pa. 464, 66 A. 855, 856, 11 L. R. A. (N. S.) 417, cited by counsel for defendant, are not analogous. The first of these cases involved a lease of coal at a stipulated royalty per ton on the coal mined. The court, speaking through Judge Kelly, said: "The general rule of interpretation, and the one consonant with reason, is that where the only consideration for a mining lease is the royalty on coal actually mined, the lessee must operate with reasonable diligence, and failing in this, must surrender the property." It was accordingly held that the cessation of mining for more than a year gave rise to a forfeiture of the lease. The lease in the Pennsylvania case provided: "The Lessee shall have the privilege for a period of one year from the date hereof of exploring and digging for ore upon the said demised premises, and that immediately thereafter mining operations must actively commence; and in case the said lessee shall immediately upon the expiration of one year from this date fail to prosecute his mining operations, and shall at any time during said remaining term of this agreement, for a continuous period of one year, fail to dig for, mine, raise and wash iron ore upon which royalty is payable as provided in this agreement, with the view of fully working said lands, then, in that case, these presents and everything contained herein shall, at the option of the lessors, cease and be forever null and void, excepting as to the liability of the lessee herein. It is further understood and agreed that, after the expiration of one year from the date of this lease, the lessee must mine and take away at least one thousand tons of iron ore annually or pay the royalty on that amount." The court very properly held that the failure of the lessee, during a continuous period of one year, "to dig for, mine, raise and wash iron ore * * * with the view of fully working said lands," entitled the lessor to forfeit the lease.

As the unusually large minimum rental or royalty furnishes ample consideration for the extension of the lease, it is not of legal concern to the defendant that the mining of the coal remaining on the leased premises is impracticable under existing conditions.

The lease has not been forfeited because the plaintiff has conducted on the leased premises a mercantile business in the store building, mentioned in the lease, and rented houses, constructed by it for the operation of the coal, to outsiders when not needed for its own employees.

The deed of lease, leasing "the sole and exclusive right and privilege of mining from any of the workable veins or seams of coal" on the 305.83 acre tract, was executed pursuant to a written option to lease the land itself for coal mining purposes, and contains many provisions contemplating, at the least, a qualified or limited use of the surface by the lessee. It was granted the right to use the surface in operating coal from other lands. In reserving the timber, the lessor also retained "the right to cut, manufacture, and remove said timber * * * and * * * the right to stack the lumber manufactured from said land until marketed." The lessee was required "to have and to keep the store-building and dwelling now situate on the leased premises insured against damage and loss by fire to the full extent of its insurable value; and, in case of damage or loss by fire," to use the proceeds of the insurance "in replacing such building or buildings so damaged or destroyed." It was also "expressly understood and agreed that as long as the lessee, its successors or assigns shall use the leased premises, or any part thereof, for any purpose whatever, including any railroad right of way, the lessee, its successors or assigns, as a condition precedent to such use, shall pay to the lessor, its successors or assigns, the minimum rental of Three Thousand ($3,000.00) Dollars per year, payable as above set out, even though all the coal on the premises herein leased shall have been mined and taken from said land." The practical construction of the instrument by the parties during the first term of ten years, also, must be considered in determining the extent and nature of the use of the surface by the lessee as contemplated by the terms of the lease deed. Neither the original lessor nor the defendant, during that period, complained of the use of the premises by the lessee now questioned. The only evidence relied on by the defendant as against acquiescence of so great a duration is the testimony of

its land agent, A. G. Russell, who testified that on March 29, 1924, and in the first week of April, following, while discussing with N. H. Manakee, stockholder and officer of the Beech Fork Coal Company, the purchase of the lease and the exchange between the two companies of coal area owned by the defendant for part of the coal area covered by the lease, he told Manakee he had been advised by attorneys for defendant "that if the lease were strictly construed" the lessee would not have the right to operate a store on the leased premises. Russell further states that he demanded, as a part of the consideration for the proposed exchange, that the plaintiff release a certain part of the surface of the leased premises and agree to confine the sale of merchandise from the store on the leased premises to its own employees. Manakee proposed to sell the lease for $125,000, while Russell told him that his company would not pay more than $75,000. The exchange was not consummated because Manakee refused to relinquish any of the surface of the leased premises. These negotiations between the representatives of the two corporations, as well as the acceptance thereafter of rentals by the defendant, tend to confirm the position of plaintiff that there is no cause for forfeiture.

The covenant in the lease requiring the lessee to keep the store building insured against damage or loss by fire, and, in case of such damage or loss, to use the proceeds of insurance in rebuilding the structure; the absence of any provision forbidding the use of the building for a general store; and the long acquiescence in such use by the original lessor and its successor, the Pocahontas Corporation—all militate against the contention that the lessee, if permitted at all to conduct a mercantile business on the leased premises, must confine the sales to its own employees.

The decree of the circuit court dismissing the bill is reversed, and the relief therein prayed granted.  *Reversed.*