The STATE ex rel. PHELPS, Appellant,

v.

COLUMBIANA COUNTY COMMISSIONERS et al., Appellees.

[Cite as *State ex rel. Phelps v. Columbia Cty. Commrs.* (1998), 125 Ohio App.3d 414.]

Court of Appeals of Ohio,
Seventh District, Columbiana County.

No. 96 CO 59.

Decided Dec. 16, 1998.

*Shawn A. Thomas,* for appellant.

*Robert L. Herron,* Columbiana County Prosecuting Attorney, and *Dan Solmen* Assistant Prosecuting Attorney, for appellees.

---

VUKOVICH, Judge.

This appeal arises from the judgment of the Columbiana County Court of Common Pleas which denied a taxpayer's complaint that sought an injunction against the means used by the Columbiana County Dog Warden to euthanize dogs. For the following reasons, the decision of the trial court is affirmed.

## I. FACTS

The initial catalyst for the present case occurred on March 26, 1996 when Columbiana County resident, Vicky Talbott ("Talbott"), forwarded a taxpayer demand letter to Columbiana County Prosecuting Attorney Robert L. Herron. In her letter, Talbott requested that Herron take legal action to halt the use of the county's antiquated carbon monoxide mechanism as a means of euthanizing dogs at the county dog pound. Talbott asserted that the facility used to euthanize dogs by means of carbon monoxide gas violated R.C. 955.16(F) as it did not immediately and painlessly render the dogs unconscious and subsequently dead. Talbott requested that Herron exercise the power granted to him under R.C. 309.12 and cause the dog warden to employ the only method of destruction that she felt complied with the statute, that being injection of sodium phenobarbital.

Subsequent to Talbott's measures, Columbiana County resident Morris Phelps ("appellant") made the same written request to Herron. Neither request made

specific reference to the euthanization of animals other than dogs at the county pound.

Due to the fact that the county prosecutor's office failed to provide any type of response to either of the demands, a taxpayer's suit pursuant to R.C. 309.13 was filed on May 1, 1996 in Columbiana County Common Pleas Court against the Columbiana County Commissioners and the county dog warden. (Hereinafter, the commissioners and the county dog warden are jointly referred to as "appellees.") In light of the allegations that the carbon monoxide method of euthanasia utilized at the county pound was in violation of R.C. 955.16(F), injunctive and declaratory relief was sought from the trial court. Additionally, the suit challenged the use of public funds to euthanize animals by use of the carbon monoxide chamber and the authority of the dog warden to house and kill cats. A motion for a temporary restraining order accompanied the complaint but was denied after a hearing on the matter.

Subsequent to the filing of the aforementioned taxpayer's suit, the commissioners purchased a newly manufactured carbon monoxide chamber to replace the one that it had been using. As a result, the initial complaint was amended to reflect the purchase of the new chamber and to include a second count seeking reimbursement of the county funds spent on the chamber, as it was alleged that this method of euthanasia did not comply with statutory requirements. Appellees filed an answer to the action on June 7, 1996.

After appropriate discovery was completed, a trial to the court was held on August 26, 1996. The trial court initially took the matter under advisement. On August 30, 1996, the court issued its judgment enjoining the county from euthanizing animals other than dogs at the county pound but denied the remaining remedies sought for in the complaint. Appellant made timely appeal from the latter part of this decision on September 19, 1996.

## II. ASSIGNMENTS OF ERROR

Appellant raises six assignments of error on appeal. In that appellant's first three assignments address the trial court's interpretation of R.C. 955.16(F), they will be considered together.

Appellant's first assignment of error reads:

"The trial court erred in interpreting the mandatory language of R.C. 955.16(F) as discretionary."

Appellant's second assignment of error reads:

"The trial court erred by applying principals [*sic*] of statutory interpretation to R.C. 955.16(F) because the language is easily ascertained by means of common usage."

Appellant's third assignment of error reads:

"The trial court erred by applying principals [*sic*] of statutory construction to R.C. 955.16(F) where the language is unambiguous."

Appellant's first attack upon the trial court's decision denying the injunction is based upon the court's interpretation of R.C. 955.16(F), which states:

"No person shall destroy any dog by the use of high altitude decompression chamber or by any method other than a method that *immediately* and *painlessly* renders the dog initially unconscious and subsequently dead." (Emphasis added.)

Appellant argues that the trial court erred in viewing the language of the statute as discretionary and further erred in applying principles of statutory interpretation and construction. It is appellant's contention that the relevant language of the statute is clear and unambiguous. Additionally, appellant feels that the method of euthanizing dogs utilized is illegal when viewed in conjunction with the statutory language.

■■■ It is well settled that the paramount consideration in construing a statute is legislative intent. *State ex rel. Zonders v. Delaware Cty. Bd. of Elections* (1994), 69 Ohio St.3d 5, 8, 630 N.E.2d 313, 315–316. In order to determine the intent of the legislature, a court must look both to the language of the statute as well as the purpose to be accomplished. *Id.* In reviewing the language of the statute, if it is determined that the language is definite and unambiguous, it is improper for the reviewing court to give the language any type of interpretation. *State ex rel. Herman v. Klopfleisch* (1995), 72 Ohio St.3d 581, 584, 651 N.E.2d 995, 997–998. However, in the event that the statute is found to be subject to various interpretations, the reviewing court may implement the rules of statutory construction and interpretation to arrive at the intent of the legislature. *Cline v. Ohio Bur. of Motor Vehicles* (1991), 61 Ohio St.3d 93, 96, 573 N.E.2d 77, 79–80. Words and phrases must be accorded their usual, normal, and customary meaning in determining whether ambiguity exists within the statute. *Hawkins v. Pickaway Cty. Bd. of Elections* (1996), 75 Ohio St.3d 275, 277, 662 N.E.2d 17, 19.

■■ In first examining appellant's assertion that the trial court viewed the language of R.C. 955.16(F) as discretionary, a review of the trial court's judgment entry reveals that appellant's view is erroneous. It is clear from the trial court's entry that it was aware of the statutory language and the requirements thereof. The trial court indicated that "[t]he sole issue before this Court is whether or not

the present CO chamber violates the legislative mandates of Section 955.16(F)." The trial court then turned its attention to a thorough analysis of what was meant when the legislature included the words "immediate and painless" in the statute. When the court eventually addressed the issue of discretion, it did so in the context of what method would be appropriate in light of the legislature's intended meaning of "immediate and painless."

The trial court found that since the legislature banned only the use of high altitude decompression chambers in euthanizing dogs, it necessarily must have meant for discretion to exist in the decision as to what specific method to employ. The trial court realized that this discretion was limited to methods which would meet the legislature's intended meaning of "immediate and painless." Since the legislature specifically precluded only one method of euthanizing dogs, the trial court logically concluded that the legislature intended discretion in choosing the method to be utilized. It was not the trial court's decision, as appellant alleges, that there was discretion as to whether to utilize a method which was neither "immediate nor painless" as intended by the legislature. Rather, the trial court recognized the fact that the statute permits discretion as to the method used to accomplish the mandates of "immediate and painless" other than a high altitude decompression chamber. Therefore, appellant's first assignment of error is overruled.

Appellant next criticizes the trial court's decision to apply rules of construction and interpretation to the statutory language. It is appellant's belief that the language of the statute is unambiguous and thus not subject to interpretation by the trial court.

A review of the statute finds that dogs may not be destroyed by any method which does not render the dog "immediately and painlessly" unconscious and subsequently dead. In that appellant's primary objection related to the immediacy issue of carbon monoxide use, the trial court properly began its analysis by examining the usual and customary meaning given to the word "immediate." It found that under both Black's Law Dictionary and the New World Dictionary of the American Language, "immediate" connoted that something occurred at once, was without delay, or was not separated in time.

If "immediate" as used in R.C. 955.16(F) were to be given its normal and customary meaning, the euthanizing of dogs would essentially be prohibited in its entirety. After all, the experts testifying for appellant at the trial court indicated that unconsciousness does not occur in dogs "immediately," as the term is customarily used, even when sodium phenobarbital is administered. With such an injection there still exists a time lag, albeit brief, from the time the injection occurs to the time the dog is rendered unconscious. Therefore, no method that has been proposed by the parties or that has been suggested in the record as

common practice would be determined to be legal under the statute. No known method can painlessly and humanely render a dog immediately unconscious.

A reading of R.C. 955.16(F) indicates that in drafting this section, the legislature in no way intended for a ban to occur on the euthanizing of dogs. This is evidenced by the fact that the legislature chose only to specifically ban one method of euthanasia, that being high altitude decompression chambers. The legislature's clear intent by enacting R.C. 955.16(F) was to specifically ban high altitude decompression chambers and to give further meaning and definition to what would be considered the humane euthanizing of dogs. Thus, the court correctly found that the language included in the statute was indefinite and ambiguous, since a literal interpretation would create a burdensome and unworkable result. To read "immediate" with its normal and customary meaning would create a situation that the legislature could not have intended, since we can assume that the legislature did not intend a burdensome and unworkable result. Moreover, had the legislature intended a specific method of euthanizing dogs, it could have stated that intent with specificity.

Because the language of R.C. 955.16(F) cannot be given its normal and customary meaning without reaching a result inconsistent with legislative intent, the trial court was then required to interpret the statutory language in order to arrive at the intent of the legislature. As previously discussed, the legislature made its intent obvious by specifically precluding one type of euthanasia and clarifying what restrictions would be placed on any remaining methods in order for them to qualify as legal.

In that "immediate" cannot be given its usual meaning, the trial court correctly found that the term must be one of degree. Because the term cannot mean "without delay," some degree of delay must be permitted by the method adopted in order to resolve the ambiguity within the statute and to allow the euthanizing of dogs to occur as expected by the legislature. In comparing the two methods of euthanasia that were proposed, those being injection and carbon monoxide, the court heard from various expert witnesses as to the "immediacy" with which each method produced unconsciousness.

The record reflects that various experts provided by the parties introduced opinions on the issue of the "immediacy" with which both carbon monoxide and sodium phenobarbital produce unconsciousness. Opinions varied on the amount of time needed to effect unconsciousness via carbon monoxide. A range was established from thirty seconds to four minutes for a dog to become unconscious depending on numerous factors.

In regard to the injection of sodium phenobarbital, it was generally agreed that a dog would become unconscious several seconds after the injection occurred.

There was speculation however, that this period of time could fluctuate depending on the size of the dog. Additionally, the record reflects that while the actual injection effected unconsciousness faster once it was administered, this procedure required a more lengthy and stressful preparation time for the dog. Especially in light of the fact that many of the dogs in the pound are strays and unfamiliar with being handled, the actual time for completion of the procedure, including preparation time, could very well exceed the time needed to utilize the carbon monoxide measures.

■ Applying the foregoing facts to the law, the trial court had to make an initial determination. Because the evidence showed that no method euthanized dogs instantaneously, the legislature's use of the word "immediately" could either be given a literal interpretation (which would render the statute burdensome at best or unworkable, at worst), or the term "immediately" could be interpreted less restrictively as to be synonymous with minimal delay. Since the latter choice is consistent with a broader public purpose and would mean that the legislature did not intend to pass a burdensome or unworkable statute, the trial court's choice in interpretation of that word cannot be deemed by this court to be in error as a matter of law or found to be an abuse of discretion.

At this juncture, it is important to note that the trial court as the trier of fact in the case *sub judice* was not required to determine whether the sodium phenobarbital method is better or preferable to the carbon monoxide method utilized in Columbiana County. Rather, the court had to determine merely whether the aforementioned carbon monoxide method violated R.C. 955.16(F).

■ When one considers the preparation time and restraints involved in the injection method favored by the appellants, the record does not clearly indicate a superiority of that method over the carbon monoxide method relative to time or the issue of "immediately." Therefore, we can find nothing in the record to formulate a conclusion that the trial court committed error unless we would find that the sodium phenobarbital is a "better" method. Because that was not the issue before the trial court, it cannot be a basis for our review. Moreover, we cannot substitute our judgment for that of the trier of fact relative to the weight to be given to the evidence. *In re Dalton* (1996), 115 Ohio App.3d 794, 797, 686 N.E.2d 345, 346–347, citing *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212. Accordingly, we affirm the trial court's interpretation of R.C. 955.16(F) and its conclusion that the carbon monoxide method to euthanize dogs in Columbiana County does not violate the "immediately" provision of that section of the Ohio Revised Code since the court's actions are supported by some credible evidence and are consistent with appropriate statutory interpretation.

The trial court was faced with similar circumstances when addressing the idea that any method of euthanasia employed must "painlessly" render the dog unconscious. The experts who testified during this matter provided varying opinions on the amount of pain experienced by a dog during the euthanasia process. The record reflects that no concrete studies have been able to opine that the carbon monoxide method of euthanizing a dog causes any amount of pain. On the contrary, the record reflects that in regard to injecting the dog with sodium phenobarbital, the dog will inevitably experience a minimal amount of pain when the syringe is inserted. Additional pain and/or anxiety may occur when the dog is restrained and/or muzzled in giving the injection.

In light of the testimony and evidence provided, the trial court properly chose a method of euthanizing dogs that complied with the legislative intent to "immediately and painlessly" render the dogs unconscious. The method of utilizing carbon monoxide most closely fit within the expectations of the legislature when it included the terms "immediately and painlessly" in R.C. 955.16(F). Utilizing the rules of statutory construction along with principles of law, we must find that the trial court properly applied R.C. 955.16(F). Further support is gained for the trial court's decision when it is recognized that no precedent can be found that specifically outlaws carbon monoxide as a form of euthanasia. In light of the above analysis, this court does not find the necessity of substituting our judgment for that of the trial court and of creating a precedent with the present case.

Thus, the trial court did not err in finding that the carbon monoxide chamber meets the statutory requirements. Therefore, appellant's first three assignments of error are without merit.

Appellant's fourth assignment of error reads:

"The trial court's decision was inconsistent with the uncontroverted evidence and it's [sic] own factual determinations and therefore against the manifest weight of the evidence."

Appellant asserts that the evidence on record is "uncontroverted" that the use of the carbon monoxide chamber in euthanizing dogs fails to meet the requirements of R.C. 955.16(F). Therefore, appellant concludes that the decision of the trial court was against the manifest weight of the evidence and therefore, the judgment of the trial court should be reversed.

It is well settled that a judgment that is supported by some competent, credible evidence going to all of the essential elements of a case will not be reversed by a reviewing court as being against the manifest weight of the evidence. *Gerijo, Inc. v. Fairfield* (1994), 70 Ohio St.3d 223, 226, 638 N.E.2d 533, 536–537. Furthermore, when considering whether the judgment of the trial court is against the manifest weight of the evidence, it is important that the

appellate court be guided by a presumption that the findings of the trier of fact are correct. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 410–411, 461 N.E.2d 1273, 1276–1277.

Despite appellant's contention that the evidence presented was uncontroverted as to the issue of compliance with R.C. 955.16(F), a review of the record finds that the trial court's decision was supported by competent, credible evidence as to all essential elements of the case. At issue is whether the practice of euthanizing dogs through the use of a carbon monoxide chamber meets the statutory requirement of "immediately and painlessly" rendering the dog unconscious and subsequently dead.

As previously discussed, the terms "immediate" and "painless" are necessarily ones of degree in order to preserve legislative intent. In addressing whether the use of carbon monoxide fulfills this intent, the trial court heard and weighed the testimony of numerous individuals. In reaching its decision, the trial court, sitting as the trier of fact, had before it testimony from Dr. Daniel Adamson and Dr. Harold Albert, both of whom are Ohio-licensed veterinarians experienced with the euthanizing of dogs.

Each individual provided testimony that established that carbon monoxide caused unconsciousness to occur rapidly with minimal distress. Additionally, testimony was provided that while the actual injection of sodium phenobarbital to euthanize dogs produces unconsciousness rapidly, the preparation of the animal for the injection can be extremely stressful for the dog. Further, appellant was unable to provide any solid proof that any amount of pain was being experienced by the dogs when they were euthanized at the county pound through the use of carbon monoxide.

In reliance on the above testimony, the trial court held that the terms of R.C. 955.16(F) had been properly complied with and thus, the method of euthanasia employed by the county could not be determined to be illegal. This conclusion was properly based on the credible testimony of both Dr. Adamson and Dr. Albert, which found that in light of the meaning of the terms "immediate" and "painless" as used in the statute, the carbon monoxide chamber could be viewed as a proper method of disposing of dogs.

Therefore, appellant's fourth assignment of error is without merit.

Appellant's fifth assignment of error reads:

"The trial court erred in failing to find that the appellee county commissioners violated their public duty by purchasing a carbon monoxide chamber when that type of device was under litigation and therein are responsible to the county for reimbursement of the cost, being $6,441.10."

In view of this court's finding that assignments of error one through three are without merit because the carbon monoxide chamber as used does not violate R.C. 955.16(F), this assignment of error is rendered moot. Appellees did not violate their public duty by purchasing a carbon monoxide chamber and thus, they are not required to reimburse the county for the $6,441.10 purchase price.

Appellant's final assignment of error reads:

"The trial court erred in not awarding plaintiffs recovery of costs and attorney fees pursuant to R.C. 309.13."

In the trial court's judgment entry, the court determined that while appellees may continue to euthanize dogs through the use of the carbon monoxide chamber, they were enjoined from euthanizing other types of animals. As a result of the injunction granted against euthanizing animals other than dogs, appellant argues that the trial court was obligated to award costs and attorney fees to appellant. The relevant statute, R.C. 309.13, states in part:

"If the prosecuting attorney fails, upon the written request of a taxpayer of the county, to * * * institute the civil action contemplated in section 309.12 of the Revised Code, the taxpayer may * * * institute such civil action in the name of the state * * *.

"* * *

"If the court hearing such case *is satisfied that such taxpayer is entitled to the relief prayed for in his petition*, and judgment is ordered in his favor, he shall be allowed his costs, including a reasonable compensation to his attorney." (Emphasis added.)

[13] Appellant's argument must fail for several reasons. Pursuant to the plain language of the statute, if the prosecutor fails upon the written request of the taxpayer to institute the "civil action contemplated," the taxpayer may institute the civil action in the name of the state. Clearly, a prerequisite to the filing of the taxpayer suit which would give rise to the opportunity for costs and attorney fees is that the taxpayer request the action of the prosecutor. Subsequent to the request, the prosecutor must refuse or neglect to bring the requested action.

In the case *sub judice*, the record indicates that appellant requested that the prosecuting attorney undertake an action to enjoin the euthanizing of dogs at the county dog pound. Nothing in the record indicates that appellant specifically sought the assistance *per se* of the prosecuting attorney to halt the euthanizing of cats or other animals. The letters which were sent to the prosecutor seeking his assistance specifically referred only to the euthanizing of dogs. While there are references in the letters to "animals" in the context of the requests presented, the

references are ambiguous, as "cats" or other types of animals are never mentioned with specificity.

Furthermore, the statute leaves to the discretion of the trial court the determination of whether the taxpayer is entitled to the relief requested and thus to attorney fees and costs. The statute clearly indicates that the taxpayer shall be entitled to costs and attorney fees only "if the court hearing such case is satisfied that such taxpayer is entitled to the relief prayed for in his petition." This language bestows broad discretion upon the trial court in determining whether the relief requested was actually obtained. The statute clearly does not mandate an award of costs and attorney fees in all cases. While the court did enjoin the euthanizing of animals other than dogs, the overwhelming premise of appellant's case related to the euthanizing of dogs. The trial court was well within its statutorily granted discretion to find that appellant was not entitled to the relief that was actually requested and was not entitled to attorney fees or costs.

Finally, there is no evidence on record to indicate that appellant raised the issue of payment of costs and attorney fees at the trial court level. Appellant first addresses this issue on appeal. Failure to raise an issue at the trial court level acts as a waiver of the issue on appeal. *Stores Realty Co. v. Cleveland* (1975), 41 Ohio St.2d 41, 43, 70 O.O.2d 123, 124, 322 N.E.2d 629, 630–631. Therefore, appellant's final assignment of error lacks merit.

For the foregoing reasons, the judgment of the trial court is affirmed in its entirety.

*Judgment affirmed.*

GENE DONOFRIO, P.J., and WAITE, J., concur.