**The STATE of Ohio, Appellee,**

**v.**

**HODGE, Appellant.**

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 01 CA 76.

Decided June 7, 2002.

Paul J. Gains, Mahoning County Prosecuting Attorney, for appellee.

Mark A. DeVicchio, for appellant.

DeGenaro, Judge.

{¶ 1} This matter presents a timely appeal from a judgment entry rendered by the Mahoning County Court for Austintown, Ohio, finding appellant Jesse F. Hodge III ("Hodge") guilty of driving under the influence in violation of R.C. 4511.19(A). Upon consideration of the record and the parties' briefs, for the reasons herein the decision of the trial court is affirmed.

{¶ 2} On July 21, 2000, at approximately 1:01 a.m., Hodge was traveling west in his pickup truck on a five-lane-wide section of Mahoning Avenue when Ohio State Highway Patrol Trooper Joel Hughes pulled behind Hodge's truck. Trooper Hughes remained behind Hodge's truck and paced his car to determine Hodge's speed, following Hodge a distance of approximately one-half mile for approximately thirty seconds.

{¶ 3} Trooper Hughes estimated that Hodge's car was traveling at forty to forty-five miles per hour in a thirty-five-mile-per-hour zone, but he did not stop him or ultimately cite him for exceeding the posted speed limit. Trooper Hughes next observed Hodge "weaving out of his [curbside] lane." Trooper Hughes explained that by "weaving" he meant "[c]rossing—he was in the left-hand lane, crossing from the right-hand partially into the left-hand." At trial, Trooper Hughes could not say exactly how far Hodge drifted into the adjacent lane but estimated several feet. Trooper Hughes further testified that Hodge's partial crossing into the parallel lane of traffic posed little danger because there was no

other traffic on the road at this time. Trooper Hughes also testified that Hodge failed to signal before drifting partially into the left lane. At trial, Trooper Hughes explained that he did not cite Hodge for failure to signal because it is the Highway Patrol's policy not to cite a driver for more than one "rules of the road" violation, and he cited Hodge for the lane violation.

{¶ 4} Trooper Hughes stopped Hodge for three reasons: (1) Hodge's speed in excess of the posted limit, (2) Hodge's failure to signal before partially drifting into the adjacent lane, and (3) Hodge's weaving out of his lane. Before being asked for his license, Hodge attempted to hand his license to Trooper Hughes through the truck window while the window was still up. After Hodge rolled down his window and handed over his license, Trooper Hughes smelled alcohol on and about Hodge. Although admittedly Hodge's speech appeared to be normal, the officer further testified that Hodge's eyes were glassy and bloodshot. Trooper Hughes performed the horizontal nystagmus gaze test and completed an impaired driver report. Last, Trooper Hughes performed a breathalyzer test, in which Hodge registered 0.139 percent. Hodge was cited for DUI in violation of R.C. 4511.19(A)(3) and failure to operate within marked lanes of the road in violation of R.C. 4511.33.

{¶ 5} Hodge filed a motion to suppress on January 11, 2001, which was denied on February 26, 2001. In overruling Hodge's motion the trial court relied upon *Dayton v. Erickson* (1996), 76 Ohio St.3d 3, 6, 665 N.E.2d 1091. On April 9, 2001, and after pleading no contest, Hodge was convicted for a first offense DUI under R.C. 4511.19(A) and the lane charge was dismissed. Hodge was fined $400, sentenced to thirty days in jail with twenty-seven days suspended, ordered to attend the Driving Intervention Program ("D.I.P."), and his driver's license was suspended for 180 days. Hodge timely filed his notice of appeal with this court on April 9, 2001, and the sentence is suspended pending this appeal.

{¶ 6} Hodge's sole assignment of error alleges:

{¶ 7} "The trial court erred as a matter of law in denying the defendant/appellant's motion to suppress, since there is insufficient evidence in the record to support a finding that the state trooper had a reasonable and articulable suspicion or probable cause that defendant was violating any traffic laws."

{¶ 8} In *State v. Brown* (June 1, 1999), 7th Dist. No. 97–CO–27, 1999 WL 343418, this court decided:

{¶ 9} "Our standard of review in an appeal of a suppression issue is two-fold. *State v. Lloyd* (Apr. 15, 1998), Belmont App. No. 96 BA 31, unreported, 2 [126 Ohio App.3d 95, 100, 709 N.E.2d 913]. As the trial court is in the best position to evaluate witness credibility, we must uphold the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Dunlap*

(1995), 73 Ohio St.3d 308, 314, 652 N.E.2d 988; *State v. Fanning* (1982), 1 Ohio St.3d 19, 20 [1 OBR 57], 437 N.E.2d 583; *State v. Winand* (1996), 116 Ohio App.3d 286, 688 N.E.2d 9. However, we must then conduct a *de novo* review of the trial court's application of the law to the facts. *State v. Anderson* (1995), 100 Ohio App.3d 688, 691, 654 N.E.2d 1034; *State v. Strassman* (Nov. 20, 1998), Athens App. No. 98 CA 10, unreported, at 2 [1998 WL 833592]; *Lloyd, supra* at 2 [126 Ohio App.3d at 100, 709 N.E.2d 913]. Thus, whether the trial court met the applicable legal standard is a question of law answered without deference to the trial court's conclusion. *Id.*" *Brown* at 1.

{¶ 10} Although the Fourth Amendment of the United States Constitution does not explicitly provide that violations of its provisions against unlawful search and seizure will result in suppression of evidence obtained as a result of a violation, the United States Supreme Court held that the exclusion of evidence is an essential part of the Fourth Amendment. *Weeks v. United States* (1914), 232 U.S. 383, 394, 34 S.Ct. 341, 58 L.Ed. 652; *Mapp v. Ohio* (1961), 367 U.S. 643, 649, 81 S.Ct. 1684, 6 L.Ed.2d 1081. The primary purpose of this exclusionary rule is to remove incentive to violate the Fourth Amendment and thereby deter police from unlawful conduct. *State v. Jones* (2000), 88 Ohio St.3d 430, 435, 727 N.E.2d 886. Thus, for the evidence against Hodge to serve as the basis for his conviction, the investigative stop must have been lawful.

{¶ 11} In order to make an investigatory stop of a vehicle, a law enforcement officer must merely have reasonable suspicion, not probable cause. *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489, paragraph two of the syllabus. Reasonable suspicion means the officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion [or stop]." *Bobo* at 178, 524 N.E.2d 489, citing *Terry v. Ohio* (1968), 392 U.S. 1, 20–21, 88 S.Ct. 1868, 20 L.Ed.2d 889.

{¶ 12} The traffic law for which Hodge was stopped and cited is R.C. 4511.33, which provides:

{¶ 13} "Whenever any roadway has been divided into two or more clearly marked lanes for traffic, or wherever within municipal corporations traffic is lawfully moving in two or more substantially continuous lines in the same direction, the following rules apply:

{¶ 14} "(A) A vehicle or trackless trolley shall be driven, as nearly as is *practicable,* entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety." (Emphasis added.)

{¶ 15} Hodge was also stopped, although not cited, for speed and lane-change violations.

{¶ 16} Beginning with *State v. Drogi* (1994), 96 Ohio App.3d 466, 645 N.E.2d 153, this court has repeatedly decided that insubstantial drifts across lane lines did not give rise to reasonable and articulable suspicion sufficient to make a traffic stop. Id. *State v. Perko* (July 9, 1999), 7th Dist. No. 97–CO–32, 1999 WL 528731; *State v. Crites* (June 18, 1998), 7th Dist. No. 96 CA 67, 1998 WL 336938; *E. Palestine v. Adrian* (June 12, 1997), 7th Dist. No. 96–C0–41, 1997 WL 321623.

{¶ 17} Subsequent to our decision in *Drogi,* the United States Supreme Court and Ohio Supreme Court have both held that *any* violation of a traffic law gives rise to a reasonable suspicion to make an investigatory stop of a vehicle. *Whren v. United States* (1996), 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89; *State v. Wilhelm* (1998), 81 Ohio St.3d 444, 692 N.E.2d 181; *Erickson,* supra (holding that when an officer has an articulable and reasonable suspicion or probable cause to stop a driver for any criminal violation, including a minor traffic violation, the stop is constitutionally valid regardless of the officer's subjective motivation for stopping the driver). Additionally, more than one appellate district has rejected any further reliance upon *Drogi.* In *State v. Spillers* (Mar. 24, 2000), 2d Dist. No. 1504, 2000 WL 299550, the Second District ruled:

{¶ 18} "The State contends, and we agree, *Drogi,* upon which the trial court relied, is of limited precedential value in view of the subsequently-decided *Whren v. United States* (1996), 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89, and *Dayton v. Erickson* (1996), 76 Ohio St.3d [3], 665 N.E.2d 1091. As we understand the holdings in both of those cases, a police officer in a marked cruiser may stop a vehicle for any traffic violation no matter how slight, for the purpose of issuing a citation for the violation. See, *State v. Stephens* (May 22, 1998), Montgomery App. [No.] 16727, unreported [1998 WL 257868]." Id.

{¶ 19} Similarly, in *State v. Young* (Dec. 31, 2001), 12th Dist. No. CA2001–03–019, 2002 WL 4526, the Twelfth District ruled:

{¶ 20} "Even assuming that [the] traffic violations were de minimis traffic violations, her argument fails. This court has held that even a de minimis traffic violation provides probable cause for a traffic stop, and that any cases to the contrary were effectively overruled by the Ohio Supreme Court in *State v. Wilhelm* (1998), 81 Ohio St.3d 444, 692 N.E.2d 181 and [*Dayton v.*] *Erickson* [1996], 76 Ohio St.3d 3, 665 N.E.2d 1091. *State v. Mehta* (Sept. 4, 2001), Butler App. No. CA2000–11–232, unreported [2001 WL 1001075]; *State v. Williams* (June 19, 2001), Clinton App. No. CA2000–11–029, unreported [2001 WL 672850]; *State v. Sandlin* (Oct. 23, 2000), Warren App. No. CA2000–01–010, unreported [2000 WL 1591152]." Id.

{¶ 21} Also in rejecting the argument that all surrounding circumstances must be looked at to determine the propriety of stopping a vehicle for a "mere" crossing of a marked right edge line, the Second District rejected the appellant's

use of *State v. Gullett* (1992), 78 Ohio App.3d 138, 604 N.E.2d 176, and *State v. Johnson* (1995), 105 Ohio App.3d 37, 663 N.E.2d 675, the cases upon which *Drogi* was premised, holding:

{¶ 22} "The Appellant, however, is citing old law which has been overruled by the United States Supreme Court in *Whren v. United States* (1996), 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89, and by the Ohio Supreme Court in *Dayton v. Erickson* (1996), 76 Ohio St.3d 3, 665 N.E.2d 1091, which promulgated the rule that a stop by a police officer based upon probable cause that a traffic violation has occurred, or was occurring, is reasonable per se. In other words, any stop based upon an officer's reasonable belief that a traffic violation has occurred, or is occurring, no matter how minor the violation, is lawful and beyond questioning." *State v. Stephens* (May 22, 1998), Montgomery App. No. 16727, at 1, 1998 WL 257868.

{¶ 23} The Fourth District has also analyzed the progeny of cases dealing with such traffic violations and observed:

{¶ 24} "As *Erickson* and *Whren* clearly state * * * the observance of traffic violations, even minor violations, justifies a traffic stop and fulfills the Fourth Amendment's reasonableness requirement." *State v. Stevens* (Aug. 30, 2000), Hocking App. No. 00 CA 05, at 6, 2000 WL 1253526.

{¶ 25} Before today, this court has undertaken an analysis on a case-by-case basis of whether each instance of crossing a lane was a violation of the law, and consequently reasonable suspicion to justify a stop. In the following instances, this court continued to distinguish *Drogi* from the case being decided, and held the stop was constitutionally valid. *State v. Saeger* (Nov. 21, 2000), 7th Dist. No. 99–CO–51, 2000 WL 1741985; *State v. Carter* (June 14, 2000), 7th Dist. No. 99 BA 7; *State v. Raley* (Sept. 13, 1999), 7th Dist. No. 97–CO–65, 1999 WL 760228; *State v. Brown* (June 1, 1999), 7th Dist. No. 97–CO–27, 1999 WL 343418; *State v. Levkulich* (Nov. 30, 1998), 7th Dist. Nos. 97–CO–51 and 97–CO52, 1998 WL 841004; *State v. Leonard* (Aug. 7, 1998), 7th Dist. No. 96–BA–72, 1998 WL 473343; *State v. Lloyd* (1998), 126 Ohio App.3d 95, 709 N.E.2d 913; *State v. Meade* (May 13, 1997), 7th Dist. No. 95 CA 76, 1997 WL 257517; *State v. Winand* (1996), 116 Ohio App.3d 286, 688 N.E.2d 9.

{¶ 26} In determining whether law enforcement has had the requisite reasonable suspicion to make an investigatory stop, this court has been mired down in deciding factual scenarios such as "insubstantial drifts" across the right-edge line, *Perko,* supra; the distance traveled by the driver and how far the vehicle traveled over the edge line, *State v. Gibson* (Apr. 4, 1995), 7th Dist. No. 92–C–21, 1995 WL 152978; and whether nine seconds was enough time for an officer to have observed a vehicle swaying between lanes before stopping the motorist. *State v. Mitchell* (June 29, 1999), 7th Dist. No. 98–CA–5, 1999 WL 476041. Further, in

*Drogi,* the opinion specifically noted that the driver " * * * was driving his vehicle, *for the most part,* within a single lane of traffic on a four lane divided highway." *Drogi* at 469, 645 N.E.2d 153.

{¶ 27} In each instance we are in effect second-guessing whether a violation rose to the level of being "enough" of a violation for reasonable suspicion to make the stop. Pursuant to *Whren* and *Erickson,* we must recognize that a violation of the law is exactly that—a violation. Trial courts determine whether any violation *occurred,* not the *extent* of the violation. Based upon the foregoing analysis, we explicitly overrule *Drogi,* as it is contrary to the subsequent decisions of *Whren* and *Erickson.*

{¶ 28} In the case at bar, however, the necessary analysis really focuses upon the meaning of "practicable" in reference to maintaining a vehicle within a lane pursuant to R.C. 4511.33. The statute does not define "practicable." Therefore, we must interpret what the statute means.

{¶ 29} "Words and phrases shall be read in context and construed according to the rules of grammar and common usage. Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." R.C. 1.42.

{¶ 30} "If a statute is ambiguous, the court, in determining the intention of the legislature, may consider among other matters:

{¶ 31} "(A) The object sought to be attained;

{¶ 32} "(B) The circumstances under which the statute was enacted;

{¶ 33} "(C) The legislative history;

{¶ 34} "(D) The common law or former statutory provisions, including laws upon the same or similar subjects;

{¶ 35} "(E) The consequences of a particular construction;

{¶ 36} "(F) The administrative construction of the statute." R.C. 1.49.

{¶ 37} This court has held in cases involving statutory construction that legislative intent is the paramount concern. *Kane v. Youngstown City Council* (Dec. 2, 1999), 7th Dist. Nos. 98 CA 43, 98 CA 59 and 98 CA 65, at 5, 1999 WL 1124755, citing *Boardman Twp. Trustees v. Fleming* (1996), 110 Ohio App.3d 539, 674 N.E.2d 1204. In his dissenting opinion in *Kane,* Judge Vukovich, a former legislator in the Ohio House and Senate, discussed statutory interpretation:

{¶ 38} "[A]s this court has previously held in *State ex rel. Phelps v. Columbiana Cty. Commrs.* (1998), 125 Ohio App.3d 414 [708 N.E.2d 784], the paramount consideration in construing statutory language is legislative intent. Id. at 419 [708 N.E.2d 784], citing *State ex rel. Zonders v. Delaware Cty. Bd. of Elections*

(1994), 69 Ohio St.3d 5, 8 [630 N.E.2d 313]. In determining the intent of the legislature, a reviewing court must look both to the language of the statute as well as the purpose to be accomplished. Id. In the event that a statute is found to be subject to various interpretations, a reviewing court may implement the rules of statutory construction and interpretation to arrive at the intent of the legislature. *Cline v. Ohio Bur. of Motor Vehicles* (1991), 61 Ohio St.3d 93, 96 [573 N.E.2d 77]." *Kane* at 9 (Vukovich, J., dissenting).

{¶ 39}  In deciding exactly what the legislature intended by the use of the word "practicable," we will use the ordinary definition and common sense. In fact, if we were to insert the definition into the statute in place of the word "practicable," the statute would read:

{¶ 40}  "(A) A vehicle or trackless trolley shall be driven, as nearly as is *performable, feasible, possible,* entirely within a single lane * * *."

{¶ 41}  When read in this context, the statute without question mandates drivers to maintain their vehicle within a lane without some kind of exigent circumstance forcing the vehicle operator to do otherwise.

{¶ 42}  "Black's Law Dictionary (5 Ed.1979) defines 'practicable' as: ' * * * that which may be done, practiced or accomplished; that which is performable, feasible, possible * * *.' Our review of the law of other jurisdictions indicates that other state * * * courts generally agree with this definition. See, *e.g., Miller v. State* (1968), 73 Wash.2d 790, 793–794, 440 P.2d 840; *Unverzagt v. Prestera* (1940), 339 Pa. 141, 144, 13 A.2d 46; *Beech Fork Coal Co. v. Pocahontas Corp.* (1930), 109 W.Va. 39, 46–47, 152 S.E. 785; *People, ex rel. Williams v. Errant* (1907), 229 Ill. 56, 66, 82 N.E. 271. * * * The Ohio Supreme Court has also defined 'practicable' as 'capable of being put into practice or accomplished,' or something that is 'reasonably possible.' *State ex rel. Fast & Co. v. Indus. Comm.* (1964), 176 Ohio St. 199, 201 [198 N.E.2d 666, 27 O.O.2d 86]." *Columbus v. Truax* (1983), 7 Ohio App.3d 49, 50–51, 7 OBR 60, 454 N.E.2d 184.

{¶ 43}  The legislature did not intend for a motorist to be punished when road debris or a parked vehicle makes it necessary to travel outside the lane. Nor, we are quite certain, did the legislature intend this statute to punish motorists for traveling outside their lane to avoid striking a child or animal. We are equally certain the legislature did not intend the statute to give motorists the *option* of staying within the lane at their choosing. Common sense dictates that the statute is designed to keep travelers, both in vehicles and pedestrians, safe. The logical conclusion is that the legislature intended only special circumstances to be valid reasons to leave a lane, not mere inattentiveness or carelessness. To believe that the statute was intended to allow motorists the option of when they will or will not abide by the lane requirement is simply not reasonable.

{¶ 44} In fact, several decisions have come to the conclusion, and we agree, that there are instances when weaving entirely within a lane may be reasonable suspicion to make an investigatory stop. First, we must acknowledge that there is no law in the state of Ohio prohibiting per se weaving within one lane. However, at least one appellate district has upheld local ordinances with such provisions. *Cuyahoga Falls v. Morris* (Aug. 19, 1998), 9th Dist. No. 18861, 1998 WL 487665; *State v. Carver* (Feb. 4, 1998), 9th Dist. No. 2673–M, 1998 WL 65483. "Courts have * * * found that weaving within a lane can support an investigatory stop, even when such weaving itself is not illegal." *State v. Flanagan* (June 14, 2000), 9th Dist. No. 99CA0045, at 2, 2000 WL 763332, citing *State v. Gedeon* (1992), 81 Ohio App.3d 617, 618–619, 611 N.E.2d 972.

{¶ 45} We do not intend our decision to stand for the proposition that movement within one lane is a per se violation giving rise to reasonable suspicion, nor does inconsequential movement within a lane give law enforcement carte blanche opportunity to make an investigatory stop.

{¶ 46} "The nature of the weaving has been used to distinguish weaving which might objectively support a stop, from weaving that would not. See *State v. Williams* (1993), 86 Ohio App.3d 37, 43, 619 N.E.2d 1141. In conjunction with other factors, such as the nature of the weaving and community patterns of behavior, the time of day at which the observations are made can provide support for a determination that the arresting officer reasonably suspected that a driver was intoxicated. See [*State v.*] *Hiler* [(1994)], 96 Ohio App.3d [271] at 274, 644 N.E.2d 1096. See, also, *Gedeon*, 81 Ohio App.3d at 619, 611 N.E.2d 972, citing [*State v.*] *Hilleary* [May 24, 1989] Miami App. No. 88–CA–5 [unreported, 1989 WL 55637], and *Montpelier v. Lyon* (May 1, 1987), Williams App. No. WMS–86–16, unreported [1987 WL 10630]. * * * In addition, while not dispositive, we agree with the Second District's observation that '[t]he erratic driving alone was a sufficient basis for an articulable and reasonable suspicion, justifying an investigatory stop to determine the reason for the erratic driving, under the holding of *Terry*. The officer may have a duty * * * to investigate the cause of the weaving, in order to protect the public, and even [the driver] against such possible causes as the driver being under the influence, the driver being unduly mentally fatigued or sleepy, or even some mechanical defect of the automobile.' *Hilleary*, Miami App. No. 88 CA 5 [unreported]." *Flanagan* at 2–3.

{¶ 47} In evaluating whether a municipal ordinance prohibiting weaving within a lane rose to the level of reasonable suspicion, the Ninth District used Webster's Third New International Dictionary (1961) 2591 to define "weave" as "to move in a devious, winding, or zigzag course." *Cuyahoga Falls* at 3. We are not saying that the driver of an automobile must maintain an arrow straight path

within a lane. A slight deviation of the vehicle's path within the lane is entirely different from weaving within a lane. Even a single drift within a lane is reasonable as it is defined as "[t]o proceed or move smoothly and unhurriedly." Webster's II New Riverside University Dictionary (1984) 405.

{¶ 48} In determining whether Trooper Hughes had reasonable suspicion to stop Hodge, the inquiry focuses upon whether Trooper Hughes could have reasonably concluded from Hodge's driving that he was violating a traffic law. *Erickson* at 11–12, 665 N.E.2d at 1097. In the instant case, Hodge was charged and convicted for a violation of R.C. 4511.33, failing to drive in marked lanes. And although not cited, he was also stopped for the speed and lane violations.

{¶ 49} Hodge argues that the instant case may be distinguished from *Erickson*, and that application of *Drogi* requires this court to grant his motion to suppress. Specifically, Hodge argues that in *Erickson*, the defendant committed a readily apparent traffic violation, an improper turn at an intersection that created reasonable suspicion, while in the instant case, Hodge only insubstantially drifted leftward into the parallel lane for an unspecified period of time less than forty seconds. Hodge argues that Trooper Hughes's observation of his drift is too subjective to serve as a ground for finding reasonable suspicion to conduct the investigative stop. This argument is not persuasive, as we have concluded that *Drogi* is no longer good law.

{¶ 50} Hodge committed a readily apparent traffic violation: he left the lane in which he was traveling when it was practicable to stay within his own lane of travel. In addition, Trooper Hughes witnessed two other violations for which Hodge could have been but was not cited. Each of these offenses separately would be reasonable suspicion to make an investigatory stop. If this court were to continue to apply *Drogi*, then it may actually prevent law enforcement officers from stopping offenders who violate R.C. 4511.33, which is illogical and contrary to statutory intent.

{¶ 51} Because Trooper Hughes had a reasonable and articulable suspicion that a violation of the law occurred, the trial court did not err in overruling Hodge's motion to suppress. Hodge's assignment of error is meritless and the judgment of the trial court is affirmed.

Judgment affirmed.

VUKOVICH, P.J., concurs.

DONOFRIO, J., concurs in part and dissents in part.

GENE DONOFRIO, Judge, concurring in part and dissenting in part.

{¶ 52} I respectfully concur in part and dissent in part from the majority opinion herein. I also would affirm the judgment of the trial court. I believe that Trooper Hughes had a reasonable and articulable suspicion that a violation of the law occurred and thus the trial court did not err in overruling Hodge's motion to suppress. I dissent with that portion of the majority opinion that specifically overrules our decision in *State v. Drogi* (1994), 96 Ohio App.3d 466, 645 N.E.2d 153. *Drogi* can be distinguished in various ways from the case herein. First of all, *Drogi* involved a divided highway/interstate. In the case at bar, the trooper witnessed a speeding violation initially. In addition, in the case at bar, the driver of the motor vehicle in question drifted several feet partially into the left-hand lane from the curb lane on a five-lane road and failed to signal. Most important, the trooper, in the case at bar, witnessed three violations of traffic laws while the trooper in *Drogi* did not observe a traffic violation. The majority opinion mischaracterizes *Drogi* as involving a violation of a traffic law. That simply was not the case.

{¶ 53} Based on the foregoing, I respectfully dissent with that portion of the majority opinion specifically overruling *State v. Drogi*, and I concur with the balance of said opinion.