OPINION
Defendant-appellant, the City of Youngstown Water Department, appeals the decision of the Mahoning County Court of Common Pleas, finding in favor of plaintiff-appellee, DK Development, in a negligence action.
On March 22, 1995, appellee filed a complaint alleging that a water line operated by appellant had broken, causing extensive damage to a building owned by appellee. According to the complaint, appellant had been negligent in constructing and repairing the water line, and in its maintenance. The complaint sought $48,000 in damages for necessary repairs to appellee's building.
A bench trial was held before Judge Charles Bannon on May 27, 1997, following which both parties submitted briefs in lieu of closing argument. The trial court issued a written opinion on July 9, 1997, finding in favor of appellee. Specifically, the trial court found that six to eight months prior to the line break a tractor-trailer had sunk into the pavement close to the location of the water line and that rather than inspect the cave-in to determine its cause, appellant had simply filled in the depressed area. Accordingly, the trial court awarded appellee $42,000. Appellant filed a timely notice of appeal on August 6, 1997.
Appellant brings two assignments of error, the first of which states:
 "THE JUDGMENT ENTERED BY THE TRIAL COURT ON JULY 9, 1997, IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN THAT IT IS NOT SUPPORTED BY COMPETENT AND CREDIBLE EVIDENCE GOING TO ALL ESSENTIAL ELEMENTS OF THE CASE."
Appellant takes issue with the trial court's finding that had appellant investigated the cause of the tractor-trailer cave-in, it would have discovered a water line break, which in turn would have prevented the resulting harm to appellee's property. Appellant notes that the only evidence offered to show that the tractor-trailer did sink into the pavement was the testimony of Michael Koval, one of the partners in DK Development. Appellant claims Koval's testimony must be closely scrutinized as he was an interested party with a financial interest in the outcome.
Appellant also claims that Koval was situated some distance away from the pavement damage and did not observe any negative effects on the water line as a result of the cave-in. Appellant notes that appellee failed to offer any evidence from employees of the City Street Department to substantiate that repairs were actually made in the area at that time, which employees could have testified as to whether the pipe was leaking at the time of the cave-in.
Appellant also claims that the testimony of David Zofko, apellee's expert, was mere speculation and does not support the trial court's findings. Zofko testified that the water line may have been leaking, which would have caused the tractor-trailer to sink into the roadway. Zofko also gave his opinion that appellant should have investigated why the cave-in occurred. Appellant notes that Zofko was not present at the time the tractor-trailer sunk into the roadway, or when the roadway was repaired, and that Zofko has never seen the pipe in question.
Appellant claims it was error to find for appellees where there was no evidence that the pipe was leaking at the time of the cave-in. Rather, appellant notes that there were a number of various other reasons to explain why the water line might have ruptured, many of which appellant claims were beyond its control.
It is well settled that judgments supported by competent credible evidence going to all the material elements of the case must not be reversed as being against the manifest weight of the evidence. Gerijo, Inc. v. Fairfield (1994), 70 Ohio St.3d 223,226. Furthermore, when considering whether the judgment of the trial court is against the manifest weight of the evidence, a reviewing court is guided by a presumption that the findings of the trier of fact are correct. State ex rel. Phelps v. ColumbianaCounty Commissioners (1998), 125 Ohio App.3d 414, 423. As such, the underlying rationale for giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflexions, and use these observations in weighing the credibility of the proffered testimony. Seasons CoalCo., Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 80. In the event the evidence is susceptible to more than one interpretation, we must construe it consistently with the lower court's judgment.Gerijo, supra.
Our review of the record fails to demonstrate that the trial court's decision was against the manifest weight of the evidence. Appellee's theory of the case was that appellant had been negligent in the installation of the water line by failing to use a granulated fill to rest the pipe on, which had resulted in a shear fracture of the pipe. Anthony Sammartino, a crew chief for the Water Department, testified that the pipe had been cracked all the way around in a manner termed a shear break. Sammartino also testified that the ground around the pipe had not been frozen. Sammartino could not recall seeing any fill around the pipe and testified that none was used to effectuate the repair.
According to Zofko, shear breaks only occur when one side of a pipe is unsupported. Zofko gave his opinion that the water line had not been installed according to industry standards and that the break had not been caused by temperature variations or traffic movement. Koval testified that six to eight months prior to the break, a tractor-trailer had sunk into the pavement above the pipe, but that the Water Department had not visited the site to check for damage to the pipe. According to Zofko, had the Water Department inspected the cave-in, it would have exposed the problem with the pipe and prevented the subsequent shear. Appellant's expert witness, Gary Seigel, testified that shear breaks could be caused by a combination of inadequate support and heavy loading, i.e. traffic movement, but could not give an opinion as to why the pipe broke.
We find appellant presented competent, credible evidence going to all the material elements in this case. Appellant claims that Koval's testimony should be closely scrutinized due to his financial interest in the litigation. Although a pecuniary interest in litigation is a proper subject of cross-examination,Stinson v. England (1994), 69 Ohio St.3d 451, 459, appellant apparently chose not to highlight this at trial. We therefore presumed the trial court, aware as it was of Koval's interest in the suit, properly considered this in weighing Koval's credibility. However, as we have already noted, credibility of witnesses is primarily for the trier of fact. Seasons, supra.
Appellee claimed the pipe had been improperly installed and that had appellant inspected the pipe during the earlier cave-in appellant would have discovered this. Although appellant claims traffic movements could have caused the shear, witnesses for both sides stated that the granulated fill in question is designed to absorb traffic vibrations. Despite appellant's claim that the winter temperatures could have caused the break, it was undisputed that the pipe was installed well below the frost line. While appellant claims there was no evidence that the pipe was leaking at the time of the earlier cave in so as to give rise to a duty to investigate, appellee presented expert testimony, which the trial court apparently found credible, that a tractor-trailer sinking into the roadway above the pipe was sufficient to cause a sub-terranean disturbance that affected the pipe. Although reasonable minds could certainly have found either way, based on the evidence, we find adequate, competent, and credible evidence to support the trial court's decision.
Appellant's first assignment of error is without merit.
Appellant's second assignment of error states:
 "THE TRIAL COURT ERRED IN FAILING TO HOLD THAT THE DEFENDANT WAS IMMUNE FROM LIABILITY PURSUANT TO OHIO REVISED CODE SECTION 2744.02."
Appellant argues that it was immune from liability pursuant to R.C. Chapter 2744 and that the trial court erred in not so holding. Specifically, although appellant concedes that a political subdivision is liable for the negligent performance of a proprietary function, and that the operation and maintenance of a water supply system is a proprietary function, appellant claims it was immune from liability as its decision not to investigate the cause of the earlier cave-in was an act involving the exercise of judgment or discretion in the allocation of resources.
In response, appellee notes that the Water Department was never notified of the cave in by the Street Department and so was unable to use its discretion in deciding whether to investigate the cave-in.[1] Because one department failed to inform the other department of the problem, appellee claims that appellant's conduct does not constitute an exercise of discretion.
R.C. 2744.02(B)(2) provides that:
 "Except as otherwise provided in sections 3314.07 and 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions."
R.C. 2744.01(G)(2) defines proprietary functions to include:
 "(c) The establishment, maintenance, and operation of a utility, including, but not limited to, a light, gas, power, or heat plant, a railroad, a busline or other transit company, an airport, and a municipal corporation water supply system."
However, R.C. 2744.03(A)(5) provides that:
 "The political subdivision is immune from liability if the injury, death, or loss to persons or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner."
Appellant claims support for its position in the case ofLadrigan v. Clermont Cty. Sewer Water Co. (Dec. 30, 1996), Clermont App. No. CA96-03-035, unreported. Ladrigan involved injury caused by the alleged negligent installation of a water meter lid. The defendant subdivision presented. affidavits of its employees establishing a policy whereby meter readers would carry replacement lids and replace lids as it was deemed necessary. The meter reader in question stated that she had detected no defect with regards to the water meter lid that had caused the injury. The Court of Appeals for Clermont County held that the determination of whether or not a water meter lid needed replacement or repair had been shown to involve the exercise of judgment or discretion, and so affirmed the trial court in granting summary judgment in favor of the subdivision.
Although Ladrigan offers little or no analysis for its decision, we fail to find any exercise of discretion or judgment in the instant case. The record establishes that the City Street Department failed even to inform the Water Department of the cave-in, let alone that the Water Department made an informed decision not to investigate any possible damage to the pipe. Because appellant failed to establish that its conduct involved the exercise of discretion or judgment in the use of its resources, the trial court correctly declined to grant appellant immunity in its exercise of a proprietary function.
Appellant's second assignment of error is without merit.
The judgment of the trial court is hereby affirmed.
Cox, J., dissents; see dissenting opinion
Vukovich, J., concurs
APPROVED:
 ______________________ Gene Donofrio Judge
[1] Although appellee filed suit against the City of Youngstown Water Department, the real party in interest in this case is the City of Youngstown. See Wilson v. Starks (1994),70 Ohio St.3d 450.