I must respectfully dissent from the opinion espoused by the majority. While I generally agree as to the case law cited by the majority, I cannot concur with the manner in which it is applied to the case at bar or the conclusion which is ultimately reached.
As the majority indicates, and as this court has previously held in State ex rel. Phelps v. Columbiana Cty. Commrs. (1998),125 Ohio App.3d 414, the paramount consideration in construing statutory language is legislative intent. Id. at 419 citing Stateex rel. Zonders v. Delaware Cty. Bd. of Elections (1994), 69 Ohio St.3d 5,8. In determining the intent of the legislature, a reviewing court must look both to the language of the statute as well as the purpose to be accomplished. Id. In the event that a statute is found to be subject to various interpretations, a reviewing court may implement the rules of statutory construction and interpretation to arrive at the intent of the legislature.Cline v. Ohio Bur. of Motor Vehicles (1991), 61 Ohio St.3d 93,96.
Despite the majority's contention that Youngstown City Ordinance 91-157 (hereinafter referred to as "91-157")[1] is not ambiguous, I submit that such a conclusion is clearly erroneous since the ordinance is subject to at least two conflicting interpretations. First, there is the interpretation discussed by the majority which maintains that 91-157 and the computer salary schedule for the City of Youngstown incorporated therein, actually created an additional five captain positions. However a second interpretation, and in my opinion the more logical one, is that 91-157 did not create any additional positions in the Youngstown Police Department.
An examination of 91-157 reveals that the purpose of said ordinance (as set forth in its Preamble) was to abolish five detective sergeant positions and two lieutenant positions. Noticeably absent from the language in this ordinance is any express intent to create additional positions beyond those in existence as a result of prior city ordinances. All that is formally discussed is the reduction of staffing levels rather than an increase in the number of available positions. Appellees, as well as the majority in this case, attempt to support their argument by pointing to the "Salary Exhibit" which had been attached to the ordinance and incorporated therein. A review of the salary exhibit reveals that a total of ten positions for captain are listed. Based upon these figures, it is believed that the City somehow impliedly doubled the number of available captain positions despite the fact that it never expressly did so through 91-157 or any other city ordinance.
However, analysis of this position reveals its inherent weakness. According to the magistrate who initially heard the case at the trial court level, the Salary Exhibit was a lengthy document produced by the City's computer center. Said document was referred to by the magistrate as being "highly inaccurate." (Magistrate's Decision at 3). Moreover, the magistrate indicated that the Salary Exhibit was "meaningless, useless, and an embarrassment to the City." (Magistrate's Decision at 4). It defies logic to rely on such a questionable document as one's sole support for the proposition that an ordinance which states a desire to eliminate positions, impliedly creates other positions. This position is further eroded when one comes to the realization that a similar Salary Exhibit was attached to Youngstown City Ordinance 83-245. In that ordinance, the City expressly reduced the number of captain positions from eight to five. However, the Salary Exhibit attached to 83-245 still delineated a total of ten captain positions. This fact was recognized by the Magistrate at page 9 of his decision. If the Salary Exhibit truly was meant to dictate the number of available positions, the text of 83-245 would be deemed irrelevant.
The fact of the matter is that the Salary Exhibit is not determinative of the number of positions which are available. As previously stated, if this was the case ten positions would have been available for captain as a result of the enactment of ordinance 83-245. The purpose of this document, as testified to by the administrator of the Youngstown Civil Service Commission, was merely to provide such information as current salary levels for various positions. Other than this limited purpose, the document was for the most part "archaic" and "useless." The administrator further testified that the Salary Exhibit consistently continued to list positions which had been entirely abolished by the City. As a result, the attachment of this document to various ordinances may in fact create confusion in that it is not reliable.
By dissenting to the majority, I in no way mean to commend the City for the methods used in drafting its ordinances. On the contrary, I find that there is much room for improvement in order to avoid similar problems in the future. Nonetheless, the confusion that the Salary Exhibit adds to the process does not in some magical way alter the intent of council in adopting 91-157. The number of captain positions set by the ordinance in 1983 clearly was five despite the fact that the Exhibit attached to the ordinance indicated ten positions existed. Furthermore, no ordinance subsequent to 83-245 increased the number of captains in the Youngstown Police Department beyond five. Similarly, 91-157 never expressly increased the number of positions beyond those in existence in 1983. On the contrary, 91-157 operated to decrease rather than increase the number of positions available on the Youngstown Police force. Based upon these facts, I would hold that the trial court abused its discretion in finding that appellees were entitled to a writ of mandamus. The more reasonable and better supported interpretation of Youngstown City Ordinance 91-157 stands for the proposition that no new positions were created in the Youngstown Police Department.
I find it to be completely unfathomable to read an ordinance that has as its stated purpose to "ABOLISH FIVE (5) DETECTIVE SERGEANT POSITIONS * * * EFFECTIVE IMMEDIATELY; * * *. FURTHER ABOLISHING TWO (2) LIEUTENANT POSITIONS * * * BY ATTRITION; * FURTHER ABOLISHING ONE (1) CAPTAIN POSITION * * *.", as clearly and unambiguously stating an intent to create five (5) captain positions. Accordingly, I dissent from the imaginative interpretation embraced by the majority and the trial court.
For the foregoing reasons, I respectfully dissent from the majority opinion.
 ___________________________ JOSEPH J. VUKOVICH, JUDGE
[1] The full text of the ordinance follows the conclusion of the dissent.
The full text of the ordinance reads:
AN ORDINANCE
 AMENDING SECTION 163.40 OF THE CODIFIED ORDINANCES OF THE CITY OF YOUNGSTOWN, AS LASTLY AMENDED BY ORDINANCE NO. 89-37, PASSED IN COUNCIL ON FEBRUARY 1, 1989, WHICH INCORPORATED, BY REFERENCE, THE 1989 — 1991 TENTATIVE LABOR AGREEMENT WITH THE FRATERNAL ORDER OF POLICE (F.O.P.) LODGE 28; THIS BEING AMENDMENT NO. 2, UNDER THE POLICE DEPARTMENT SECTION IN SAID AGREEMENT, AS FOLLOWS:
 ABOLISH FIVE (5) DETECTIVE SERGEANT POSITIONS (POSITION NO. 3662), EFFECTIVE IMMEDIATELY; SAID FIVE (5) POSITIONS ARE NOT PRESENTLY FILLED;
 FURTHER ABOLISHING TWO (2) LIEUTENANT POSITIONS (POSITION NO. 7340), BY ATTRITION;
 *FURTHER, ABOLISHING ONE (1) CAPTAIN POSITION, BY ATTRITION AND PROVIDING THAT THIS ORDINANCE SHALL BE AN EMERGENCY MEASURE IF IT RECEIVES THE AFFIRMATIVE VOTE OF SIX OF THE MEMBERS OF COUNCIL; OTHERWISE, IT SHALL TAKE EFFECT AND BE IN FORCE FROM AND AFTER THE EARLIEST PERIOD ALLOWED BY LAW.
* * *
 BE IT ORDAINED BY THE COUNCIL OF THE CITY OF YOUNGSTOWN, STATE OF OHIO:
 SECTION 1
 That Section 163.40 of the Codified Ordinances of the City of Youngstown, as lastly amended by Ordinance No. 89-37, passed in Council on February 1, 1989, which incorporated, by reference, the 1989 — 1991 TENTATIVE LABOR AGREEMENT with The Fraternal Order of Police (F.O.P.) Lodge 28, as follows:
[Attached Computer Salary Exhibit]
 * — AMENDMENT DECEMBER 18, 1991 — [BY STIPULATION NOT ENFORCEABLE].
 SECTION 2
 That this ordinance is hereby declared to be an emergency measure necessary for the immediate preservation of the public peace, welfare and safety, the emergency being the necessity to amend Section 163.40, of the Codified Ordinances of the City of Youngstown, as lastly amended by Ordinance No. 89-37, passed in Council on February 1, 1989, which incorporated, by reference the 1989 — 1991 TENTATIVE LABOR AGREEMENT with The Fraternal Order of Police (F.O.P.) Lodge 28, to abolish five (5) Detective Sergeant positions (Position No. 3662), effective immediately, and abolish two (2) Lieutenant Positions (Position No. 7340), by attrition, as further hereinabove described; and provided it receives the affirmative vote of six of the members elected to the legislative authority, it shall take effect and be in force immediately upon its passage and approval by the Mayor; otherwise, it shall take effect and be in force from and after the earliest period allowed by law.